FOURTH DIVISION
November 12, 2010

No. 1-08-2895

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 07 CR 13118 |
| | ) | |
| ROBBIN DAVIS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | Honorable |
| | ) | James B. Linn, |
| | ) | Judge Presiding. |

JUSTICE LAVIN delivered the opinion of the court:

Here, we consider the case of defendant Robbin Davis, who was found guilty of violating the armed habitual criminal statute after a jury trial and sentenced to 7½ years in prison. On appeal, defendant asserts that (1) the trial court failed to comply with Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007); (2) the armed habitual criminal statute (720 ILCS 5/24-1.7 (West 2006)) is unconstitutional; (3) trial counsel was ineffective; (4) the trial court erroneously did not permit the court reporter to record all proceedings; and (5) defendant's sentence was improperly based on a miscalculation or vindictiveness by the trial court. For reasons that will be elucidated at some length below, we affirm in all respects.

At trial, Officer Lonnell Williams testified that early in the morning hours of June 8, 2007, he, Officer Daniel Pruszewski and Officer John Cherep were in an unmarked police car when they observed a sport utility vehicle (SUV) speed through a stop sign. The officers

followed the SUV and activated their lights and sirens. Although the driver of the SUV appeared as if he was slowing down to pull over, he kept driving instead. The officers were about 100 feet behind the SUV when it eventually pulled over on a well-lit street. Officer Williams observed defendant holding a large gun as he exited the passenger door of the SUV and ran into the bushes. When the officers reached that location, Officer Williams exited his car and ordered defendant to get out of the bushes. After defendant crawled out, Officer Williams handcuffed and detained him. Because the SUV had driven away, Officers Pruszewski and Cherep got back in their car and pursued the SUV. When the officers returned between 30 and 60 seconds later, Officer Williams searched in the bushes and recovered the gun he had seen in defendant's hands. The gun was loaded with 31 rounds of ammunition. Officer Williams testified that William Archer, the driver of the SUV, was eventually apprehended by a different officer and that a third individual, named Duryea Wright, was also arrested. Officer Pruszewski substantially corroborated Officer Williams' testimony, differing as to who actually ordered defendant to come out of the bushes. Officer Patrick Kinney also testified regarding the subsequent arrest of Archer and Wright.

Wright testified that on the night in question, he was with defendant and Archer in a Chevy Blazer when they drove through a stop sign. At some point, all three men exited the car and fled from the police. Wright did not specifically remember when defendant exited the car but did recall that defendant was not armed that evening.

The parties stipulated that in 2004, defendant was convicted of the felony offense of aggravated unlawful use of a weapon and that in 2003, defendant was convicted of the felony

offense of manufacture or delivery of a controlled substance under the name Johnnie Davis. The jury found defendant guilty of being an armed habitual criminal and the trial judge sentenced him to 7½ years in prison.

First, defendant asserts the trial court failed to properly question the prospective jurors regarding whether they understood and accepted certain principles, as required by Supreme Court Rule 431(b). Defendant does not dispute that he failed to object to this alleged error. Nonetheless, he asserts that a Rule 431(b) violation requires automatic reversal or that reversal is required under the plain error doctrine.

Rule 431(b) is a codification of our supreme court's decision in People v. Zehr, 103 Ill. 2d 472 (1984), which held that the trial court erred by refusing the defendant's request to ask the venire about four fundamental principles of law. Zehr, 103 Ill. 2d at 476-78. The four Zehr principles are that (1) the defendant is presumed innocent; (2) the defendant must be proved guilty beyond a reasonable doubt; (3) the defendant is not required to produce any evidence; and (4) the defendant's failure to testify cannot be held against him. Zehr, 103 Ill. 2d at 477. Pursuant to Rule 431(b), the trial court must address the Zehr principles, even in the absence of a specific request by the defendant and "shall ask each potential juror, individually or in a group, whether that juror understands and accepts" those principles. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. In addition, "[t]he court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

1-08-2895

At first blush, it is questionable at best that any error occurred here. As to the first two Zehr principles, the trial court admonished the venire that "[a] criminal trial starts with the person accused of a crime at the beginning of the proceedings presumed to be incident [*sic*]," and made additional comments which were substantially similar. Those comments indicated to the venire that the presumption of innocence exists from the beginning of the trial. Nothing in the court's subsequent statements would lead the venire to believe that any later event would remove that presumption. The court also stated that "[t]he only way someone can be guilty of a crime is if the government who brought the charges against the accused is able to prove the accused guilty beyond a reasonable doubt," and stated that "[t]he government has the burden of proof." In addition, after each one of those two principles was relayed to the jury, the court asked whether anyone had "a problem" with the respective principle and no hands were raised. This question was specifically directed at each of those respective principles and was broad enough to invite any juror who either did not understand or did not accept the referred-to principle to indicate as such. *Cf*. People v. Graham, 393 Ill. App. 3d 268, 273-74 (2009) (error was found where the first panel of jurors was not questioned regarding the State's burden to prove the defendant guilty beyond a reasonable doubt and the second panel was not asked any questions regarding the presumption of innocence). No juror indicated a lack of understanding or acceptance after either question.

As to the remaining two principles, the court informed the venire as follows:

> "An accused does not have to testify. They don't have to call any
> witnesses on their own behalf. They don't have to prove a thing. *** With that

4

said, is there anybody here who would hold it against the accused if they did not testify or didn't call any witnesses on their own behalf? Does anybody think the accused has some responsibility to testify or prove their innocent [*sic*], or anything like that, if you have feelings like that, please raise your hand."

No hands were raised. Although defendant asserts that it was improper for the court to combine the remaining two Zehr principles, this court has found the opposite to be true. People v. McCovins, 399 Ill. App. 3d 323, 327 (2010) (rejecting the defendant's assertion that the trial court was required to question the jurors about each individual principle). In addition, the court's questions were sufficiently broad so that if any juror had responded to either question in the affirmative, it would have shown that he or she failed to understand or accept either that the defendant's decision to refrain from testifying could not be held against him or that he had no obligation to produce evidence. See People v. Raymond, No. 1-08-2891, slip op. at 42 (August 13, 2010) (there is no magic language which must be used to determine whether the potential jurors understand and accept the four Zehr principles). A trial court complies with Rule 431(b) when it admonishes the venire regarding the four Zehr principles and gives the venire an opportunity to disagree with them. McCovins, 399 Ill. App. 3d at 328. We find the court did so here. Even assuming the trial court erred, our supreme court recently held that a violation of Rule 431(b) does not constitute a structural error requiring automatic reversal and declined to adopt a bright-line rule of reversal for every violation. People v. Thompson, No. 109033, slip op. at 9-10, 14 (October 21, 2010). Accordingly, we consider whether any error here rises to plain error.

5

1-08-2895

Under the plain error doctrine, we will review unpreserved error when either (1) the evidence is closely balanced, regardless of the seriousness of the error; or (2) the error is serious, regardless of the closeness of the evidence. People v. Herron, 215 Ill. 2d 167, 186-87 (2005). The first step of plain error analysis is deciding whether any error has occurred. Thompson, No. 109033, slip op. at 11. As stated, defendant has not shown any clear error under these facts. Assuming error did occur, defendant, for obvious reasons, does not suggest that the evidence against him was closely balanced. We will therefore consider only the second prong of the plain error test, *i.e.*, whether the claimed error is serious, regardless of the closeness of the evidence.

Defendant essentially asserts that the alleged error here violated his right to a fair and impartial jury. In Thompson however, our supreme court held that bias will not be presumed merely because the trial court erred in performing the Rule 431(b) questioning; rather, Rule 431(b) questioning is not indispensable to selecting an impartial jury and the defendant carries the burden of showing that the jury was biased. Thompson, No. 109033, slip op. at 12-13. In light of defendant's failure to identify any portion of the record affirmatively showing that his jury was not fair and impartial, he has failed to show a serious error, as required under the second prong of plain error. Defendant has not demonstrated his entitlement to a new trial based on any Rule 431(b) violation.

Next, defendant asserts the armed habitual criminal statute (720 ILCS 5/24-1.7 (West 2006)) violates the due process afforded a defendant by both the United States and Illinois Constitutions because the statute creates a substantive offense, thereby placing the defendant's prior convictions before the jury and causing him prejudice.

6

We review the constitutionality of a statute *de novo*. People v. Leonard, 391 Ill. App. 3d 926, 931 (2009), citing People v. Malchow, 193 Ill. 2d 413, 418 (2000). A statute is presumed to be constitutional and the party challenging its constitutionality carries the burden of showing that a violation exists. People v. Allen, 382 Ill. App. 3d 594, 598 (2008). As defendant acknowledges, the statute at hand will be upheld if rationally related to a legitimate state purpose. See People v. Jackson, 269 Ill. App. 3d 851, 857 (1995) (because personal liberty deprived by lawful incarceration does not constitute a fundamental right, such legislation will be upheld if it is rationally related to a legitimate state purpose).

Section 24-1.7(a) of the Criminal Code of 1961 (the Code) states, in pertinent part, as follows:

> "A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>
> (1) a forcible felony as defined in Section 2-8 of this Code;
>
> (2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm; or
>
> (3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher."

1-08-2895

720 ILCS 5/24-1.7(a) (West 2006).

Being an armed habitual criminal is a Class X felony. 720 ILCS 5/24-1.7(b) (West 2006). As defendant acknowledges, his qualifying prior convictions are elements of the offense. Leonard, 391 Ill. App. 3d at 932.

Defendant does not dispute that the State has a legitimate interest in preventing the danger associated with repeat felons having firearms or that the legislature was entitled to find that felons convicted of certain offenses pose a greater danger when in possession of a firearm. Defendant contends however, that making the specified prior convictions elements of the offense, rather than simply allowing the trial judge to utilize the information as sentencing enhancement factors, is prejudicial. See People v. Lathon, 317 Ill. App. 3d 573, 586 (2000) (treating recidivism as an element of the charged offense could result in significant prejudice). Recently, after the parties' briefs were filed in this case, another panel of this court rejected a defendant's contention that the armed habitual criminal statute violates due process. People v. Adams, No. 1-08-0455, slip op. at 8-11 (September 17, 2010). Furthermore, courts have long upheld statutes placing prior convictions before a jury notwithstanding the recognized risk of prejudice. Thus, the readily appreciated risk of prejudice in this setting is not necessarily dispositive in deciding whether this sort of criminal statute is constitutional.

In Spencer v. Texas, 385 U.S. 554, 17 L. Ed. 2d 606, 87 S. Ct. 648 (1967), the Court rejected a due process challenge to Texas statutes pursuant to which the jury, through allegations in the indictment and introduction of proof, was informed of the defendant's prior conviction. Noting that several recidivist statutes had been implemented by the states and the federal

8

government, the Court observed that under the Texas procedure, "the conceded possibility of prejudice is believed to be outweighed by the validity of the State's purpose in permitting introduction of the evidence." Spencer, 385 U.S. at 559-61, 17 L. Ed. 2d at 611-12, 87 S. Ct. at 651-52. In addition, the Court stated that a state law does not violate the fourteenth amendment because a different method may appear to the Court's thinking to be wiser or fairer or give a surer guarantee of protection to the defendant and rejected the argument that a two-stage jury trial was required when a state seeks to invoke a habitual-offender statute. Spencer, 385 U.S. at 564-65, 567-68, 17 L. Ed. 2d at 614-17, 87 S. Ct. at 654-55. The Court found that a determination of which procedure best addresses the problem of recidivism required considering a variety of factors, including which method was most complementary to existing state trial procedures, which was least prejudicial to the ultimate determination of guilt and innocence and which gives the most adequate notice to a defendant and the best opportunity to challenge the accuracy of the alleged prior convictions. Spencer, 385 U.S. at 567, 17 L. Ed. 2d at 616, 87 S. Ct. at 655. The Court held that "[i]n the face of the legitimate state purpose and the long-standing and widespread use that attend the procedure under attack here, we find it impossible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause." Spencer, 385 U.S. at 564, 17 L. Ed. 2d at 614, 87 S. Ct. at 654.

Immediately following Spencer, our supreme court reaffirmed that the Illinois unlawful use of a weapon offense required the State to prove the existence of the defendant's prior felony at trial. People v. Owens, 37 Ill. 2d 131, 132 (1967). Relying on Spencer, the court rejected the

defendant's assertion that the inclusion of his prior felony in the indictment violated the due process guaranteed by the state and federal constitutions. Owens, 37 Ill. 2d at 132. Since that time, Illinois courts have continued to reject due process challenges to the inclusion of a prior conviction as an element of an offense. See People v. Palmer, 104 Ill. 2d 340, 345, 348 (1984) (since the State must prove the prior conviction before the jury to secure a conviction for felonious unlawful use of a weapon and pursuant to Spencer, it is not constitutionally mandated that a prior conviction be omitted from the indictment or excluded from the proof admitted at trial); People v. Edwards, 63 Ill. 2d 134, 136-39 (1976) (pursuant to Spencer, due process was not denied where the defendant's prior conviction was presented to the jury as an element of felonious unlawful use of a weapon even though the prior conviction was not an element of his armed robbery charge); Jackson, 269 Ill. App. 3d at 856 (presenting to a jury proof of a prior conviction as an element of an offense does not offend due process). Recently, this court once again upheld the unlawful use of a weapon by a felon statute (720 ILCS 5/24-1.1(a) (West 2004)) against a defendant's assertion that the statute violated his right to due process because permitting the jury to know of his prior conviction as an element of the offense was inherently prejudicial. Allen, 382 Ill. App. 3d at 597-600.

We see no meaningful difference between the procedure required by that statute and the procedure required by the armed habitual criminal statute. In light of the foregoing case law, defendant has not shown that making his prior convictions independent elements of the armed habitual criminal offense, rather than a sentencing enhancement, violates due process.

Defendant's reliance on Old Chief v. United States, 519 U.S. 172, 136 L. Ed. 2d 574, 117

S. Ct. 644 (1997), and People v. Walker, 211 Ill. 2d 317 (2004), is expected, but entirely misplaced. In Old Chief, the Court held that where the defendant was willing to stipulate to the fact of his prior conviction, the district court abused its discretion under Rule 403 of the Federal Rules of Evidence in admitting the record of the prior conviction because the risk of unfair prejudice substantially outweighed the discounted value of the record of conviction. Old Chief, 519 U.S. at 191-92, 136 L. Ed. 2d at 594-95, 117 S. Ct. at 655-56. There, the prosecutor refused to join in the stipulation at trial and instead introduced the order of judgment and commitment for his prior conviction, which included the name of the prior conviction. Old Chief, 519 U.S. at 177, 136 L. Ed. 2d at 585-86, 117 S. Ct. at 648. The Supreme Court found there was no question that evidence of the name or nature of the prior offense carries a risk of prejudice and that only the fact of a prior conviction carrying a prison term of one year, rather than the nature of the offense, mattered under that statute. Old Chief, 519 U.S. at 174, 185-86, 136 L. Ed. 2d at 584, 590-91, 117 S. Ct. at 647, 652-53.

In Walker, our supreme court observed that it was not bound by Old Chief, which was based on an interpretation of a federal statute. Walker, 211 Ill. 2d at 336. Nonetheless, the Court found Old Chief's reasoning to be persuasive and observed that, like the statute in that case, Illinois's unlawful possession of a weapon by a felon offense did not require proof of a specific felony conviction. Thus, presenting the name and nature of the prior conviction was held to be unnecessary and prejudicial surplusage. Walker, 211 Ill. 2d at 337-38. The court found that the State has no right to present unfairly prejudicial evidence when equally probative and non-prejudicial evidence is available. Walker, 211 Ill. 2d at 339. Noting that its holding was narrow,

the court held that where the defendant offers to stipulate to the fact of his prior conviction, the diminished probative value of the record of conviction is outweighed by the risk of unfair prejudice and, as a result, the trial court abuses its discretion by admitting the record of conviction and informing the jury of the name and nature of the conviction. Walker, 211 Ill. 2d at 338, 341.

These cases did not involve a due process challenge and cannot be said to represent a departure from the aforementioned due process case law. See Allen, 382 Ill. App. 3d at 599. Furthermore, in this matter, contrary to the statutes involved in Old Chief and Walker, the legislature has determined that offenders who have been convicted of certain specified offenses should be prevented from possessing or using a gun. Thus, in contrast to those cases, it is insufficient under the statute at hand for the State to prove that the defendant had a prior felony; rather, the State must prove that defendant had two or more specific qualifying felonies.

Relying on the legislative history behind this statute, defendant somewhat cynically argues that the legislature failed to effectuate its goal of modeling the armed habitual criminal offense after the federal Armed Career Criminal Act of 1984 (ACCA) (18 U.S.C. §924(e)(1) (2000)), a sentencing-enhancement statute. Assuming the armed habitual criminal offense is modeled after the ACCA, defendant ignores that the debates show the bill is "not exactly like the Federal Statute," and it was argued that "in some ways this Bill is even better." 93d Ill. Gen. Assem., House Proceedings, March 29, 2004, at 32-33 (statements of Representative Brosnahan). As defendant acknowledges, the Illinois legislature was not required to duplicate a federal statute and our legislature's decision not to do so was deliberate. He has failed to show how this

12

1-08-2895

enlivens his due process claim.

Defendant further contends that the armed habitual criminal statute violates the principle that evidence of other crimes for which the defendant is not on trial may not be admitted to establish his propensity to commit crime. See People v. Jackson, 399 Ill. App. 3d 314, 321 (2010). Defendant fails to recognize however, that evidence of other crimes may be admissible for any relevant purpose other than proving a defendant's propensity to commit crimes. Jackson, 399 Ill. App. 3d at 321; People v. Ash, 346 Ill. App. 3d 809, 814 (2004). In this case, defendant's prior crimes were admitted to satisfy elements of the present offense, not to show his propensity to commit crimes, and he has not suggested how this furthers his due process claim.

We also reject defendant's suggestion that the court was required to conduct a bifurcated trial. As stated, in Spencer, the Court specifically rejected that argument, finding that even if the two-stage jury trial was the fairest, it was not mandated by due process. Spencer, 385 U.S. at 567-68, 17 L. Ed. 2d at 616, 87 S. Ct. at 655-56. Illinois courts have also rejected the assertion that the United States and Illinois Constitutions require a prior felony conviction to be admitted as evidence in a bifurcated proceeding only after the jury has otherwise determined the defendant's guilt. People v. Johnson, 27 Ill. App. 3d 1047, 1051-52 (1975); see also People ex rel. Carey v. Pincham, 76 Ill. 2d 478 (1979) (trial court was not authorized to conduct a bifurcated trial on felonious unlawful use of a weapon, at which the jury would determine whether the defendant possessed a gun before hearing evidence of the prior conviction); but see Lathon, 317 Ill. App. 3d at 586-87 (in upholding a recidivist sentencing enhancement, the court observed that putting sentencing factors before a jury would "inevitably interject against the

13

defendant highly prejudicial evidence during the trial" and "raise questions for the defense including issues of jury bifurcation").

We further observe that although recently Supreme Court Rule 451(g) was enacted to permit a bifurcated trial, that rule applies only where an enhanced sentence is imposed under section 111-3(c-5) of Code of Criminal Procedure of 1963 (725 ILCS 5/111-3(c-5) (West 2004)), and not where the legislature has made particular facts elements of the offense. Allen, 382 Ill. App. 3d at 601; 210 Ill. 2d R. 451(g). Because the legislature has made certain prior felony convictions elements of the armed habitual criminal offense, a bifurcated trial was unnecessary. See Allen, 382 Ill. App. 3d at 601.

Finally, to state the obvious, we are a court of review, not the legislature. Even if we believe a wiser or fairer means may exist to achieve the legislature's objective, this does not rise to a determination that the armed habitual criminal statute is not rationally related to a legitimate state purpose. We are confined to our role as a reviewing court.

Defendant additionally asserts that the armed habitual criminal statute violates *ex post facto* principles. As defendant acknowledges, this court has previously rejected his assertion. Adams, slip op. at 11-12; People v. Bailey, 396 Ill. App. 3d 459, 464 (2009); Leonard, 391 Ill. App. 3d at 931-32. We adhere to these cases, which we find to be well reasoned.

Defendant further contends that trial counsel was ineffective for stipulating to his prior convictions, failing to request a bifurcated trial and for presenting a mistaken identity theory in opening statement when it was not supported by the evidence. We note that as to defendant's third argument, defendant was represented by a supervised senior law student, who gave the

1-08-2895

opening statement. See 210 Ill. 2d R. 711.

To show that counsel was ineffective, a defendant must demonstrate both that counsel's performance was deficient and, as a result, the defendant was prejudiced. People v. Bailey, 232 Ill. 2d 285, 289 (2009), citing Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The failure to satisfy either prong precludes finding that counsel was ineffective. People v. Colon, 225 Ill. 2d 125, 135 (2007). Under the deficiency prong, there is a strong presumption that trial counsel's action or inaction resulted from sound trial strategy. People v. Perry, 224 Ill. 2d 312, 341-42 (2007). To show prejudice, a defendant must demonstrate a reasonable probability exists that but for counsel's error, the result of proceedings would have been different. People v. Harris, 389 Ill. App. 3d 107, 132 (2009). Furthermore, the Strickland test also applies where a defendant is represented by a law student under attorney supervision pursuant to Rule 711, so that where the attorney's supervision of the law student is insufficient, such that her performance is ineffective under Strickland, the defendant is entitled to a new trial. In re Denzel W., 237 Ill. 2d 285, 298 (2010).

We categorically reject defendant's assertion that trial counsel was ineffective for stipulating to defendant's prior convictions, including the name of those convictions, and allowing them to be entered into evidence for the jury's consideration. This court has previously found that Old Chief and Walker suggest that where a defendant's status as a felon is an element of the offense, a stipulation to his prior felony conviction is the least prejudicial means of introducing the evidence to the trier of fact. Allen, 382 Ill. App. 3d at 599. As stated, specific qualifying prior convictions are elements of this offense and defendant ignores that in the

15

absence of a stipulation, the State would have put other evidence before the jury. Although the statute before us requires the State to prove not just the fact of any prior felony conviction, but one of the specifically enumerated prior convictions, we find that in this case, stipulating to those convictions and their names in order to satisfy elements of the offense was inarguably less prejudicial than making the prior convictions an issue in the case. We do not find that counsel's decision to stipulate that one of the convictions was under the name Johnnie Davis changes the result, as the State would have had to prove at trial that defendant was in fact Johnnie Davis (which defendant does not dispute) in order to show the conviction belonged to him. Defendant has not overcome the strong presumption that counsel stipulated to the prior convictions as a matter of sound trial strategy or shown that he was prejudiced by counsel's decision.

Similarly, defendant's assertion that counsel was ineffective for failing to request a bifurcated trial also fails. As explained above, defendant has not shown the trial court was authorized or compelled to order a bifurcated trial based on his prior convictions being elements of the offense. We cannot agree that counsel was deficient for, or defendant was prejudiced by, counsel's decision not to make a request since there is no reason to believe it would have been granted.

We further find that the defense's opening statement did not constitute ineffective assistance of counsel. The law student argued that defendant did not have a gun on the night in question and the only testimony that would place a gun in his possession was the testimony of officers who saw a man with a gun exit a car in the dark more than 100 feet away. The law student also argued that Wright would testify he was sitting in the car next to defendant when

16

defendant jumped out of the car, but that defendant did not have a gun. Thus, the opening statement essentially challenged the State's ability to show that defendant had a gun and suggested that if the police did see a man with a gun, it could not have been defendant. Although defendant challenges the defense's characterization of the case as one of mistaken identity, the evidence presented substantially reflected the evidence to be expected from the opening statement. *Cf.* People v. Davis, 287 Ill. App. 3d 46, 55-56 (1997) (trial counsel was ineffective where he (1) informed the jury during opening statement that the defendant would testify, despite not having investigated his criminal background, (2) did not present the defendant's testimony after learning of the State's intention to impeach him with a prior conviction, and (3) drew attention to the absence of the defendant's testimony during closing argument). The law student never told the jury it would hear evidence of another suspect. *Cf.* People v. Ortiz, 224 Ill. App. 3d 1065, 1070-73 (1992) (trial counsel was ineffective where he argued in his opening statement that a second identified suspect existed, but did not elicit such evidence due to a lack of knowledge regarding rules of witness examination). Contrary to defendant's suggestion, we cannot say the defense's opening statement would have led the jury to expect evidence beyond what was presented. Assuming the defense theory could have been better articulated, defendant has not shown that a reasonable probability exists that but for counsel's error, the result of proceedings would have been different.

We also reject defendant's assertion that he is entitled to a new trial because the court abused its discretion in not permitting the court reporter to record sidebar conferences. Specifically, defendant contends there were eight sidebars held off the record during *voir dire*,

jury selection and Wright's testimony. Defendant also asserts it was improper for the jury instruction conference to proceed in the absence of the court reporter. We note that defendant has not developed an argument explaining how the lack of court reporter inhibited our review of any particular issue. We review questions regarding the application of a supreme court rule *de novo*. People v. Reed, 376 Ill. App. 3d 121, 125 (2007).

Supreme Court Rule 608(a) states, in pertinent part, as follows:

"The record on appeal must contain the following:

* * *

(5) all motions, transcript of motion proceedings, and orders entered thereon;

* * *

(8) the report of proceedings, including opening statements by counsel, testimony offered at trial, and objections thereto, offers of proof, arguments and rulings thereon, the instructions offered and given, and the objections and rulings thereon, closing argument of counsel, communications from the jury during deliberations, and responses and supplemental instructions to the jury and objections, arguments and rulings thereon;

(9) in cases in which a sentence of death is imposed, a transcript of all proceedings regarding the selection of the jury, and in other cases the court reporting personnel as defined in Rule 46 shall take the record of the

18

proceedings regarding the selection of the jury, but the record need not be transcribed unless a party designates that such proceedings be included in the record on appeal[.]" 210 Ill. 2d R. 608(a).

Rule 608(b) further states as follows:

"The report of proceedings contains the testimony and exhibits, the rulings of the trial judge, and all other proceedings before the trial judge, unless the parties designate or stipulate for less. It shall be certified by court reporting personnel or the trial judge and shall be filed in the trial court within 49 days after the filing of the notice of appeal, or, if a death sentence is imposed, the report of proceedings, and one copy for inclusion in the duplicate record, shall be certified and filed within 49 days from the date of the sentence. The report of proceedings shall be taken as true and correct unless shown to be otherwise and corrected in a manner permitted by Rule 329." 210 Ill. 2d R. 608(b).

See also 210 Ill. 2d R. 46(a) ("The record of court proceedings may be taken by stenographic means or by an electronic recording system approved by the Supreme Court. All transcripts prepared as the official record of court proceedings shall be prepared pursuant to applicable supreme court rules").

Supreme Court Rule 608(a) requires the record on appeal to be exhaustively inclusive. Ash, 346 Ill. App. 3d at 813. Failing to memorialize *voir dire* does not however, deprive a defendant of all hope of an adequate appeal. Ash, 346 Ill. App. 3d at 813. When challenging the absence of a court reporter during *voir dire*, it is insufficient to allege that a transcript of the *voir*

19

*dire* might reveal some error; rather, prejudice is not presumed and the defendant must allege a specific error resulting from the proceeding. People v. Russell, 385 Ill. App. 3d 468, 473 (2008); see also People v. Culbreath, 343 Ill. App. 3d 998, 1005 (2003) (the absence of a court reporter at *voir dire* does not violate due process, particularly where the defendant does not raise a specific claim of error). In addition, this court has rejected a defendant's claim that the trial court committed reversible error under Rule 608(a)(9) by allowing the jury to be selected in the absence of the court reporter, where the defendant did not provide or allege that he attempted to provide a bystander's report or agreed statement of facts in substitution for a transcript, as required by Supreme Court Rule 323 (166 Ill. 2d R. 323). People v. Morris, 229 Ill. App. 3d 144, 155-56 (1992). In light of this well-reasoned case law pertaining to unrecorded *voir dire* proceedings, we find defendant is not entitled to relief, notwithstanding that his claim extends to unrecorded proceedings other than *voir dire*.

In defendant's motion for new trial, he challenged the trial court's decision not to permit the court reporter to be present at side conferences. As defendant acknowledges, at the hearing on his motion, the court explained that having the court reporter move equipment back and forth for sidebars takes significant time. As a result, the court's policy was to have the sidebars proceed in the absence of the court reporter and then, once the jury has left the room, spread of record what had occurred. We observe that neither trial counsel nor appellate counsel has disputed Judge Linn's representation regarding the reason for the policy or suggested that trial counsel was unaware of the policy. Thus, pursuant to the court's policy, defendant was entitled to make a clear record of any prior objections or motions that ensued. To the extent that

20

defendant decided not to do so, this does not constitute trial court error.

Defendant contends however, that following the denial of his motion for a directed verdict, the court did not permit counsel to spread of record her argument in support thereof. After the close of evidence, the trial court acknowledged on the record that defense counsel had made a timely motion for a directed verdict, but it found that there were sufficient facts to allow the jury to make a factual determination. Defense counsel then asked the court to reconsider the denial of the motion for a directed verdict, thereby preserving any error resulting from the court's denial. See People v. Barrow, 133 Ill. 2d 226, 249 (1989) (the defendant's election to present evidence after the trial court has overruled his motion for a directed verdict waives any error in the court's ruling unless the defendant renews the motion at the close of evidence). Defendant does not explain how the court's decision not to spread counsel's particular arguments of record inhibited his ability to challenge the court's ruling on appeal.

Assuming the court erred by not having the court reporter record all proceedings, we find this is not sufficient to warrant relief. Defendant has failed to assert a specific error that is not subject to complete review in light of the lack of transcript. Defendant only speculates that a transcript could reveal errors pertaining to the admissibility of Wright's testimony, *voir dire* and jury selection. In addition, defendant observes that the jury instruction conference was held off the record but points to no instruction that should have been tendered to the jury. Such speculation is insufficient. *Cf.* People v. Houston, 226 Ill. 2d 135, 138 (2007) (where the defendant raised a specific challenge to the composition of the jury in a motion for new trial and on appeal and trial counsel had waived having a court reporter at *voir dire*, our supreme court,

emphasizing the limited scope of its decision, determined that the appropriate solution under those circumstances was to remand for construction of a bystander's report); People v. Houston, 229 Ill. 2d 1, 6-10 (2008) (following remand and reconstruction of a bystander's report, the court found that even if *voir dire* had been recorded, defendant could not have shown prejudice). Moreover, defendant does not allege that he even attempted to provide an acceptable substitute for a transcript. See 210 Ill. 2d Rs. 323(c), (d); Morris, 229 Ill. App. 3d at 155-56; compare People v. Ramos, 295 Ill. App. 3d 522 (1998) (the defendant was granted a new trial on her insufficiency of the evidence claim where no transcript of trial proceedings was available due to trial counsel's failure to file the notice of appeal for three years and the participants in the trial lacked the ability to prepare a bystander's report). Accordingly, defendant is not entitled to a new trial, although we believe the better approach is to have the court reporter transcribe sidebar discussions.

Finally, defendant asserts we should reduce his sentence of 90 months to 61.2 months in prison pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)).

Where the trial court imposes a sentence within the permissible statutory range, a reviewing court has the power to disturb the sentence only if it constitutes an abuse of discretion. People v. Lavelle, 396 Ill. App. 3d 372, 385-86 (2009). Although Supreme Court Rule 615(b)(4) specifically permits this court to reduce a sentence as a form of relief, we may not do so absent an abuse of discretion. People v. Aguilar, 396 Ill. App. 3d 43, 58 (2009). Defendant does not dispute that being an armed habitual criminal is a Class X felony (720 ILCS 5/24-1.7(b) (West 2006)), and thus, requires a sentence between 6 and 30 years' imprisonment (730 ILCS 5/5-8-

22

1-08-2895

1(a)(3) (West 2006)). Accordingly, defendant's 7½-year sentence falls within the permissible sentencing range and will not be disturbed absent an abuse of discretion.

At sentencing, the following colloquy ensued:

"THE COURT: Are the parties sure this is an eighty-five percent case?

MS. YURCHAK [Assistant public defender]: I'm almost sure.

THE COURT: I don't want to hear about almost. I'm not sure. I don't want to sentence somebody on almost."

After further discussion, Assistant Public Defender (APD) Yurchak stated she believed that defendant would be subject to 85% good-conduct credit but was not certain. The assistant State's Attorney then indicated she believed defendant was not subject to 85% credit. The court stated as follows:

"I don't have anything – You know, when you're here, as you are, talking about sentencing you can't make a misrepresentation about what the sentencing range is, you can't. You can't tell me this is an eighty-five percent case if it's not. Now, are you telling me that I'm mistaken, that this is an eighty-five percent case and I ought to consider that?"

APD Yurchak apologized and the court sentenced defendant to 10 years' imprisonment. The court admonished defendant regarding his right to an appeal and the case was passed. When the case was recalled, the court stated that contrary to its prior understanding, defendant was subject to 85% good-conduct credit. The court said, "Let me look at these numbers again in light of that. I was not aware of that." The court then stated that because it was an 85% case, it would reduce

23

defendant's sentence to seven years' imprisonment. The court then said, "Just a second. The sentence is ninety months, that's my sentence, ninety months in the penitentiary, seven and a half years, ninety months in the penitentiary."

Defendant argues that when the court sentenced him to 10 years' imprisonment, the court was under the impression that defendant would serve 50% of his sentence and thus, would serve 5 years, or 60 months, in prison. Defendant acknowledges that after the court learned defendant would serve 85% of his sentence, the court decreased the number of years imposed to 7½ years. He argues however, that because 85% of his sentence would be 76 ½ months, he will effectively be serving a longer sentence. Defendant assumes that this increase in the sentence he will actually serve demonstrates the court's miscalculation or vindictiveness for counsel's misrepresentation regarding the credit percentage.

Defendant's position is at once based on speculation and a misunderstanding of good-conduct credit, a matter which the trial court does not control. The label "truth-in-sentencing" applies to a change in the statutory method which the Illinois Department of Corrections uses to calculate the amount of good-conduct credit to which a defendant is entitled. People ex rel. Ryan v. Roe, 201 Ill. 2d 552, 556 (2002). Under the Unified Code of Corrections, a defendant normally receives day-for-day good-conduct credit. People v. McDade, 345 Ill. App. 3d 912, 915 (2004), citing 730 ILCS 5/3–6-3(a)(2.1) (West 2000). Pursuant to subsection 3-6-3(a)(2)(ii), however, a defendant who has been convicted of certain enumerated offenses, including being an armed habitual criminal, "shall receive no more than 4.5 days of good conduct credit for each month of his or her sentence of imprisonment." 730 ILCS 5/3-6-3(a)(2)(ii) (West 2006). Thus,

defendant does not dispute that he must serve at least 85% of his sentence. Roe, 201 Ill. 2d at 556. Nonetheless, section 3-6-3(a)(2)(ii) governs only the *potential* credit that a defendant may receive for good conduct. People v. Castano, 392 Ill. App. 3d 956, 959 (2009). The award of any good-conduct credit is contingent upon a defendant's behavior in prison and there is no guarantee that the defendant will receive any credit. Castano, 392 Ill. App. 3d at 959-60; People v. Frison, 365 Ill. App. 3d 932, 935 (2006). Furthermore, the trial court has no control over the manner in which a defendant's good-conduct credit is earned or lost and it is within the Department of Correction's discretion to calculate what credit, if any, he will receive. Castano, 392 Ill. App. 3d at 960.

Here, the amount of credit that defendant will actually receive remains to be seen and was not a matter within the determination of the trial court's sentencing order. Thus, it is improper to compare the amount of time that defendant might serve under a 10-year sentence with the amount of time he might serve under his 7 ½-year sentence. Indeed, if defendant does not earn any good conduct in prison, he will serve less time under his present sentence. In addition, we reject defendant's argument that a miscalculation has occurred because the court meant to impose a sentence in which defendant's projected time actually spent in prison would be the same as that under the original 10-year sentence. The record shows that defendant's projected time in prison under the 85% credit scheme was one factor considered by the court, not the only factor. Nonetheless, assuming as defendant does that he would have spent 60 months in prison under his original sentence, defendant would still serve a minimum of 61.2 months in prison if the minimum 6-year term were imposed here. Thus, the trial court could not have achieved that

25

1-08-2895

which defendant suggests the court meant to achieve.

We also find the record shows no vindictiveness arising from any misunderstanding regarding defendant's potential good-conduct credit. At most, the court's comments and decision to reduce defendant's sentence demonstrate its caution not to impose too onerous of a sentence, notwithstanding that the court changed defendant's ultimate sentence from 7 years to 7 ½ years. The trial court was not required to find that the facts presented in this case warranted the minimum six-year sentence. Accordingly, defendant's arguments and alleged harm are purely speculative. Defendant has not shown the trial court abused its discretion and we have no power to reduce his sentence. *Cf.* Roe, 201 Ill. 2d at 557-58 (where the defendant pled guilty pursuant to an agreement, under which both parties incorrectly believed the defendant was entitled to day-for-day good-conduct credit, our supreme court exercised its supervisory authority and granted him equitable relief in the form of a sentencing reduction pursuant to Supreme Court Rule 651(b)(4).

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

O'BRIEN, J., and FROSSARD, J., concur.

1-08-2895

REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each Case)

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | THE PEOPLE OF THE STATE OF ILLINOIS, )<br> )<br> Plaintiff-Appellee, )<br> )<br> v. )<br> )<br> ROBBIN DAVIS, )<br> )<br> Defendant-Appellant. ) |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. 1-08-2895<br>Appellate Court of Illinois<br>First District, FOURTH Division<br><br>November 12, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE LAVIN delivered the opinion of the court:<br><br>O'BRIEN, J., and FROSSARD, J., concur |
| APPEAL from the Circuit Ct. of Cook County. | Lower Court and Trial Judge(s) in form indicated in the margin:<br>The Honorable James B. Linn, Judge Presiding. |

Indicate if attorney represents APPELLANTS or APPELLEES and include
attorneys of counsel. Indicate the word NONE if not represented.

| | | |
|---|---|---|
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Attorneys for **Plaintiff/Appellee**:<br>People<br><br><br><br><br>Attorneys for **Defendant/Appellant**:<br>Robbin Davis<br><br><br>Alcon Laboratories, Inc. | Anita Alvarez, State'e Attorney<br>Alan Spellberg, Samuel Shim, ASA's of counsel<br>Room 309 Daley Center<br>Chicago, IL 60602<br><br>Michael Pelletier, State Appellate Defender<br>Patricia Unsinn, Deputy Defender<br>Lindsey J. Anderson, Assistant Appellate Defender<br>203 N. LaSalle St., 24th floor<br>Chicago, Illinois 60601<br>312.814.5472 |