# Illinois Official Reports

## Appellate Court

---

### *People v. Rush*, 2014 IL App (1st) 123462

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORDELL RUSH, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-3462 |
| Filed | September 30, 2014 |
| Rehearing denied | November 3, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for unlawful use of a weapon by a felon, the appellate court rejected defendant's contention that the unlawful use of a weapon by a felon statute, which forbids a person previously convicted of a forcible felony from applying for a firearm owners identification card until at least 20 years have passed since the conviction, is unconstitutional as applied, since the State has an interest in restricting the legal possession of firearms by felons and defendant did not establish that the restriction was arbitrary. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-60756; the Hon. Luciano Panici, Judge, presiding. |
| Judgment | Affirmed; mittimus corrected. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Todd T. McHenry, all of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, William Toffenetti, and Christopher R. Sullivan, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. Presiding Justice Palmer and Justice Reyes concurred in the judgment and opinion. |

## OPINION

¶ 1    Following a jury trial, defendant Cordell Rush was convicted of unlawful use of a weapon by a felon (UUWF) and possession of a firearm with defaced identification marks. The latter conviction merged with the UUWF conviction and the trial court subsequently sentenced defendant to a term of eight years in the Illinois Department of Corrections.

¶ 2    Defendant appeals, arguing that: (1) the Illinois UUWF statute (720 ILCS 5/24-1.1(a) (West 2010)) is unconstitutional as applied because it forbids a person previously convicted of a forcible felony from applying for a firearm owners identification card (FOID card) until at least 20 years have passed since the conviction; (2) the State improperly used his prior felony conviction to prove an element of the UUWF charge and to elevate the classification of the offense to a Class 2 felony; and (3) the mittimus should be corrected to show that the lesser charge of possession of a firearm with defaced identification marks merged with the UUWF conviction.

¶ 3    Since defendant has not challenged the sufficiency of the evidence on appeal, we will present a brief summary of the facts underlying defendant's conviction.

¶ 4    In April 2009, defendant's daughter Corneshia Rush went to defendant's house with a friend to visit him. During the course of the conversation, defendant and Corneshia began to argue. Defendant yelled for someone to get his gun and told Corneshia that he was "gonna put [her] in the ground." Defendant then left the room for approximately 30 seconds and returned with a gun in his hand. Defendant sat down at the kitchen table and then unloaded and reloaded the gun. Defendant waved the gun in the air. Corneshia called her mother on the telephone. Defendant spoke to Corneshia's mother and told her that if she called the police he was going "to show them how crazy he really is." Corneshia testified at trial that defendant "was going to kill me, I guess." Corneshia's mother called back and spoke with defendant, who allowed Corneshia to leave. Corneshia left with her friend and ran down the street to meet an uncle and wait for her mother.

¶ 5        Sergeant K.C. Erickson of the Calumet City police department spoke with Corneshia, her friend, her mother, and defendant's live-in girlfriend. Defendant's girlfriend gave the officer permission to enter defendant's home. While in the home, Sergeant Erickson saw a .45-caliber round on top of the dryer in the laundry room. He then recovered a .45-caliber handgun under the mattress in the master bedroom and a bulletproof vest in a closet. Sergeant Erickson observed that the serial number had been scratched or filed off of the handgun. He also found a wallet and gas and electric bills which listed defendant's name and listed the address of the home. Defendant admitted possession of the gun but denied threatening Corneshia with it. He said the gun was in his waistband during the argument, but he did not take it out.

¶ 6        Following deliberations, the jury found defendant guilty of UUWF and possession of a firearm with defaced identification marks. The trial court merged the latter count into the UUWF conviction and sentenced defendant for an extended-term sentence of eight years.

¶ 7        This appeal followed.

¶ 8        On appeal, defendant contends that he does not challenge the State's ability to place restrictions on the possession of firearms by felons, but the statute violates the second amendment of the United States Constitution and the right to bear arms under the Illinois Constitution because defendant was barred from applying for a FOID card for a period of 20 years based on a single felony burglary conviction from 1997, which criminalized his possession of a handgun in his home.

¶ 9        Defendant admits that he has raised this issue for the first time on appeal, but contends he has not forfeited the issue because a constitutional challenge can be raised at any time. To preserve an issue for review, a defendant must both object at trial and in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, as defendant asserts, "a constitutional challenge to a criminal statute can be raised at any time." *In re J.W.*, 204 Ill. 2d 50, 61 (2003); see also *People v. Wright*, 194 Ill. 2d 1, 23 (2000); *People v. Bryant*, 128 Ill. 2d 448, 454 (1989); *People v. Bailey*, 396 Ill. App. 3d 459, 462 (2009) ("While it is true, and defendant concedes, that he did not preserve this issue accordingly, we note that we are dealing with a constitutional challenge involving the validity of a statute. Such an argument may be presented at any time, regardless of a violation of technical waiver rules.").

¶ 10       " '[A]ll statutes are presumed to be constitutional, and the burden of rebutting that presumption is on the party challenging the validity of the statute to demonstrate clearly a constitutional violation.' " *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005) (quoting *People v. Greco*, 204 Ill. 2d 400, 406 (2003), citing *People v. Sypien*, 198 Ill. 2d 334, 338 (2001)). Further, a court, whenever reasonably possible, must construe a statute to uphold its constitutionality. *Dinelli*, 217 Ill. 2d at 397. We review the constitutionality of a statute *de novo*. *Dinelli*, 217 Ill. 2d at 397.

¶ 11       Section 24-1.1(a) of the Criminal Code of 1961 (the Code) provides:

"It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction. This Section shall not apply if the person has been granted relief by the Director of the Department of State Police under Section 10 of the Firearm Owners Identification Card Act." 720 ILCS 5/24-1.1(a) (West 2008).

¶ 12    Section 10(c)(1) of the Firearm Owners Identification Card Act (the Act) provides:

"(c) Any person prohibited from possessing a firearm under Sections 24-1.1 or 24-3.1 of the Criminal Code of 1961 or acquiring a Firearm Owner's Identification Card under Section 8 of this Act may apply to the Director of the Department of State Police or petition the circuit court in the county where the petitioner resides, whichever is applicable in accordance with subsection (a) of this Section, requesting relief from such prohibition and the Director or court may grant such relief if it is established by the applicant to the court's or Director's satisfaction that:

\*\*\*

(1) the applicant has not been convicted of a forcible felony under the laws of this State or any other jurisdiction within 20 years of the applicant's application for a Firearm Owner's Identification Card, or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction[.]" 430 ILCS 65/10(c)(1) (West 2008).

¶ 13    "The purpose of the UUWF statute 'is to protect the health and safety of the public by deterring possession of weapons by convicted felons, a class of persons that the legislature has determined presents a higher risk of danger to the public when in possession of a weapon.' " *People v. Garvin*, 2013 IL App (1st) 113095, ¶ 14 (quoting *People v. Crawford*, 145 Ill. App. 3d 318, 321 (1986)).

¶ 14    Under section 24-1.1 of the Code, defendant, as a felon, was prohibited from possessing a handgun unless he had been granted relief under section 10 of the Act. Defendant was convicted of burglary in 1997, and under section 10(c)(1) of the Act, he was not eligible to apply for a FOID card until 20 years had passed since the end of his imprisonment on that conviction. Defendant argues that section 24-1.1 violated his second amendment rights by criminalizing his possession of a firearm when more than 10 years had passed since his burglary conviction and he was barred from applying for a FOID card. Defendant contends that section 24-1.1 is unconstitutional as applied to him. "An as-applied challenge stems from the defendant's contention that the statute as it was applied to the defendant's particular situation is unconstitutional." *Id.* ¶ 17. "Facts surrounding the defendant's particular circumstances are only relevant to an as-applied challenge." *Id.*

¶ 15    In *People v. Aguilar*, the Illinois Supreme Court found that the Class 4 form of the aggravated unlawful use of a weapon statute, section 24-1.6(a)(1), (a)(3)(A), (d) of the Code (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)), which made it unlawful for a person to possess an uncased, loaded and immediately accessible firearm except when the person was on his land or in his abode or fixed place of business, was a comprehensive ban, rather than a reasonable regulation, of the right to possess and use an operable firearm for self-defense outside the home. *People v. Aguilar*, 2013 IL 112116, ¶ 21. Accordingly, the court concluded that section 24-1.6(a)(1), (a)(3)(A), (d) of the aggravated unlawful use of a weapon statute was facially unconstitutional because it violated the second amendment. *Id.* ¶ 22.

¶ 16    However, *Aguilar*, relying on the Supreme Court decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), specifically found that the right to bear arms is subject to certain restrictions and is not unlimited.

" 'Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and

- 4 -

courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.' *Heller*, 554 U.S. at 62.

From there, the Court went on to emphasize that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.' *Id*. at 626-27. The Court then immediately added, by way of footnote, that '[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.' *Id*. at 627 n.26." *Aguilar*, 2013 IL 112116, ¶ 26.

See also *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 786 (2010) (reiterating its statement in *Heller* that its holding did not impact the restrictions on firearm possession by felons).

¶ 17 In *Wilson v. County of Cook*, 2012 IL 112026, ¶¶ 41-42, the Illinois Supreme Court set out a two-pronged approach to consider the constitutionality of a statute. First, the court must consider "whether the challenged law imposes a burden on conduct falling within the scope of the second amendment guarantee." *Id*. ¶ 41. "That inquiry involves a textual and historical inquiry to determine whether the conduct was understood to be within the scope of the right at the time of ratification." *Id*. (citing *Heller*, 554 U.S. at 634-35). "If the government can establish that the challenged law regulates activity falling outside the scope of the second amendment right, then the regulated activity is categorically unprotected." *Id*. (citing *Ezell v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011)). "Where the court finds the law imposes a burden on conduct falling within the scope of the second amendment, the court proceeds to the second inquiry and determines what level of constitutional scrutiny to apply." *Garvin*, 2013 IL App (1st) 113095, ¶ 29 (citing *Wilson*, 2012 IL 112026, ¶¶ 41-42).

¶ 18 In *Garvin*, the defendant was found guilty of UUWF after the police recovered live ammunition in his residence while executing a search warrant and he had previous felony convictions. *Id*. ¶¶ 4-7. On appeal, the defendant challenged the constitutionality of the UUWF statute, arguing that " 'a blanket prohibition against the mere possession of bullets with no firearm inside of one's home cannot survive constitutional scrutiny.' " *Id*. ¶ 12. The reviewing court considered the defendant's challenge under the analysis set forth in *Wilson* and rejected the defendant's challenge. *Id*. ¶ 29. The court specifically noted that the United States Supreme Court in *Heller* "concluded that the core of the second amendment protection was 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.' " *Id*. ¶ 30 (quoting *Heller*, 554 U.S. at 635).

¶ 19 The court concluded that the defendant

"has failed to offer any decision, in any jurisdiction, finding a statute prohibiting a felon from possessing a firearm or firearm ammunition in his or her home to be unconstitutional under the second amendment. Accordingly, we hold felon-based firearm bans, including firearm ammunition, like the UUWF statute, do not impose a burden on conduct falling within the scope of the second amendment.

Moreover, even if we were to determine the second amendment was implicated by [the defendant's] conviction based on possession of firearm ammunition, we would

still find the UUWF statute facially valid under the second prong of the *Wilson* inquiry." *Id.* ¶¶ 33-34.

¶ 20    The *Garvin* court then considered and rejected the defendant's assertions that the UUWF statute is subject to heightened constitutional scrutiny under strict scrutiny or intermediate scrutiny. *Id.* ¶¶ 35-36. "To satisfy strict scrutiny, the means used by the legislature must be necessary to a compelling State interest, and the statute must be narrowly tailored, using the least restrictive means possible to achieve its purpose." *Id.* ¶ 35. The State urged the court to decline any heightened scrutiny and to employ the rational basis test. *Id.* ¶ 37. "Under rational basis scrutiny, the court must consider whether the challenged classification bears a rational relationship to a legitimate government purpose." *Id.*

¶ 21    The court then observed that the armed habitual criminal (AHC) statute (720 ILCS 5/24-1.7(a) (West 2010)) had previously been found constitutional under both heightened scrutiny and a rational basis test. *Garvin*, 2013 IL App (1st) 113095, ¶ 40 (citing *People v. Ross*, 407 Ill. App. 3d 931, 942 (2011) (finding that the AHC statute was a "constitutionally permissible restriction of the second amendment right to bear arms, as a valid exercise of government's right to protect the health, safety, and general welfare of its citizens. The restriction serves a substantial governmental interest and is proportional to the interest served."), and *People v. Davis*, 405 Ill. App. 3d 585, 592-94 (2010) (upholding the AHC under the rational basis test)).

¶ 22    The court held that "[l]ike the AHC statute, the UUWF statute is a valid exercise of Illinois's right to protect the health, safety, and general welfare of its citizens from the potential danger posed by convicted felons in possession of firearms or firearm ammunition. The UUWF statute is proportional to the interest served." *Id.*

¶ 23    We find the analysis in *Garvin* to be well reasoned and thorough and adopt it in this case. Defendant has not cited any authority to show that the UUWF statute satisfies the first prong under *Wilson*, such that a restriction on firearm ownership by felons imposed a burden on conduct falling within the second amendment. Instead, defendant offers a general argument that the relevancy of a prior felony diminishes over time such that the State lacks a sufficient basis for criminalizing his possession of a firearm. As our analysis has shown, the second amendment does not extend to firearm possession by felons and defendant's argument must fail.

¶ 24    Further, we point out that the UUWF statute has been consistently upheld as constitutional following *Aguilar*. See *People v. Burns*, 2013 IL App (1st) 120929, ¶ 27 ("we conclude the possession of firearms by felons is conduct that falls outside the scope of the second amendment's protection"); *People v. Neely*, 2013 IL App (1st) 120043, ¶ 12 ("[A]ccording to our supreme court ruling in *Aguilar*, the State has a valid interest in preventing felons from possessing firearms. Therefore, defendant's arguments to the contrary fail, and the UUWF statute is valid."); *People v. Davis*, 408 Ill. App. 3d 747, 750 (2011) (holding that the UUWF statute did not on its face violate the second amendment).

¶ 25    Accordingly, we hold that the UUWF statute is not unconstitutional under the second amendment.

¶ 26    Defendant also contends that the UUWF statute violates due process and equal protection because the right for felons to obtain legal firearm possession must not be done arbitrarily. According to defendant, the Illinois statutory process to attain a FOID card by a felon is

arbitrary because it grants the right to some felons but denies the right to others. Defendant's argument lacks merit.

¶ 27　　We first distinguish the cases relied on by defendant. Defendant bases his claim that the arbitrary application of the UUWF and FOID statutes violates due process and equal protection on cases that have little relation to the present case. In *Griffin v. Illinois*, 351 U.S. 12, 18 (1956), the United States Supreme Court held that a state may not grant an indigent defendant the right to an appeal, but then arbitrarily deny the defendant a free trial transcript to pursue an appeal, which essentially foreclosed his right to appeal. In *Allen v. Duckworth*, 6 F.3d 458, 459-60 (7th Cir. 1993), the Seventh Circuit indicated that an extended delay in deciding an appeal would violate due process where the five-year delay in deciding the appeal amounted to a denial of the right to a state-granted appeal. As the State points out, in both of these cases, "a state granted a right and then denied that right to a person without a legitimate basis." Defendant has not shown how the UUWF and FOID statutes granted a right but then arbitrarily denied the same right to others.

¶ 28　　Defendant also relies on two North Carolina cases for support. " 'Although it is helpful to look to other jurisdictions for guidance, we are not bound by those decisions and must decide the case in a manner consistent with Illinois law.' " *People v. Sito*, 2013 IL App (1st) 110707, ¶ 21 (quoting *Independent Trust Corp. v. Kansas Bankers Surety Co.*, 2011 IL App (1st) 093294, ¶ 24).

¶ 29　　Both cases involved plaintiffs who committed felonies, completed their sentences, and had their right to possess a firearm restored prior to 1995, but subsequently lost that right after the legislature changed the law and sought a declaratory judgment on their rights to own firearms. See *Britt v. State*, 681 S.E.2d 320, 321 (N.C. 2009); *Baysden v. State*, 718 S.E.2d 699, 701-02 (N.C. Ct. App. 2011). In 1995, the North Carolina legislature amended the relevant statute "to prohibit the possession of such firearms by all persons convicted of any felony, without regard to the date of conviction or the completion of the defendant's sentence," but did not change the previous language that did not prohibit possession in one's home or business. *Britt*, 681 S.E.2d at 321. However, in 2004, the legislature amended the statute again, enacting a complete prohibition of firearm possession by a felon, including their home or business. *Id.*

¶ 30　　In *Britt*, the North Carolina Supreme Court concluded that the statute was unconstitutional as applied to the plaintiff, finding that the statute was "an unreasonable regulation, not fairly related to the preservation of public peace and safety" and the State "unreasonably divested plaintiff of his right to own a firearm." *Id.* at 323. "[I]t is unreasonable to assert that a nonviolent citizen who has responsibly, safely, and legally owned and used firearms for seventeen years is in reality so dangerous that any possession at all of a firearm would pose a significant threat to public safety." *Id.*

¶ 31　　Similarly, in *Baysden*, the appellate court found the plaintiff to be in the same position as the plaintiff in *Britt*. *Baysden*, 718 S.E.2d at 704. "Plaintiff was convicted of two felony offenses, neither of which involved any sort of violent conduct, between three and four decades ago. Since that time, Plaintiff has been a law-abiding citizen. After having had his firearms-related rights restored, Plaintiff used such weapons in a safe and lawful manner from the date of restoration until he became subject to the prohibition worked by the 2004 amendment to the Felony Firearms Act on 1 December 2004." *Id.* The reviewing court held that the plaintiff's as-applied challenge had merit and ordered summary judgment to be granted in his favor on his constitutional challenge of the statute. *Id.* at 706.

¶ 32    Neither of these cases has any relevance to the case here. At issue in those cases was not the remoteness of the prior felony convictions, but that the plaintiffs' rights to legally possess firearms had been restored and then revoked, despite both having maintained a clean criminal record for decades. Further, both plaintiffs adhered to the change in the law and pursued a declaratory judgment action, rather than illegally possessing firearms, as defendant in the instant case did. Critically, unlike the plaintiffs in *Britt* and *Baysden*, defendant has never had his legal right to own firearms restored. Neither case touched on the right of a state to set forth restrictions, including the passage of time, before a felon may have his right to legally possess a firearm restored.

¶ 33    Moreover, defendant has failed to show the State has given a right, but arbitrarily denied him a right. As thoroughly discussed above, the State has an interest in placing restrictions on the legal possession of firearms by felons. Defendant fails to show how the restriction against individuals convicted of forcible felonies to wait 20 years before seeking a legal FOID card is an arbitrary restriction. He has not cited any relevant authority to establish an arbitrary operation of these statutes. Therefore, we reject defendant's claim that the UUWF statute violated his due process and equal protection rights under the constitution.

¶ 34    Defendant next asserted that his prior felony conviction for burglary was improperly used as a double enhancement for both an element of the offense of UUWF and as a basis to elevate the class of his offense. However, during the pendency of the appeal, the supreme court rejected this same argument in *People v. Easley*, 2014 IL 115581, ¶ 28. Defendant concedes in his reply brief that this decision "forecloses the instant argument." Therefore, we need not consider this issue any further.

¶ 35    Finally, defendant asks this court to correct the mittimus because it incorrectly lists a conviction for possession of a firearm with a defaced serial number, which had merged with the UUWF conviction. The State concedes this error and asks this court to correct the mittimus to reflect the correct offense for which defendant was convicted.

¶ 36    Under Supreme Court Rule 615(b)(1), this court has the authority to order a correction of the mittimus. Ill. S. Ct. R. 615(b)(1) (eff. Jan. 1, 1967). Accordingly, we order the mittimus to be corrected and reflect the offense for which defendant was convicted: one conviction for unlawful use of a weapon by a felon.

¶ 37    Based on the foregoing reasons, we affirm defendant's conviction and sentence, and the mittimus is corrected as ordered.

¶ 38    Affirmed; mittimus corrected.