2015 IL App (1st) 123381
No. 1-12-3381
Opinion filed February 11, 2015

FOURTH Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10CR16938 |
| | ) | |
| HUBERT SUMLER, | ) | The Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Howse and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1        After a jury trial, defendant Hubert Sumler was found guilty of aggravated kidnapping, violation of an order of protection, and domestic battery. Defendant was sentenced to 28 years' imprisonment for aggravated kidnapping, 3 years' imprisonment for violation of an order of protection, and 3 years' imprisonment for domestic battery, all sentences to run concurrently. On appeal, defendant contends: (1) his aggravated kidnapping conviction should be reduced to kidnapping where the State failed to introduce evidence during trial of his prior domestic battery conviction that enhanced his domestic battery to a felony; (2) the

State failed to prove him guilty of aggravated kidnapping where the asportation of the victim was so brief that it was merely a part of the commission of the separate offense of domestic battery; (3) this court should order a new sentencing hearing; and (4) his domestic battery conviction should be vacated as a lesser included offense of aggravated kidnapping, which was predicated on the same domestic battery. The State properly concedes that his domestic battery conviction should be vacated as a lesser included offense of aggravated kidnapping. For the following reasons, we affirm defendant's convictions for aggravated kidnapping and violation of an order of protection, and vacate his conviction for domestic battery; in addition, we otherwise affirm his sentence, with the modification that his second 3-year term for his conviction for domestic battery, accordingly, vacated.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant was charged with aggravated kidnapping, vehicular hijacking, vehicular invasion, kidnapping, eight counts of violation of an order of protection, and eight counts of domestic battery for an incident that occurred on March 30, 2010. The following evidence was adduced at trial.

¶ 4        The victim, S.M., testified that she and defendant had three children together. At the time of trial, the children were ages 18, 14, and 4. She had known defendant for 19 years, but they never married. On the day of the incident at issue here, March 30, 2010, S.M. had a no-contact order of protection in effect against defendant, requiring him to stay away from her house and her job. Defendant was present when the order of protection was issued.

¶ 5        At approximately 5 a.m. on March 30, 2010, S.M. returned home alone a vehicle. She parked on the street directly in front of her house on the 300 block of West 43rd Street. She opened the door slightly as she was preparing to exit the vehicle. Defendant suddenly

appeared at the driver's side door and began punching her in the face and head. S.M. attempted to flee by climbing into the passenger seat with the hope of escaping out the passenger door. She was bleeding from her face. Defendant climbed into the driver's seat as he was hitting her and drove away before S.M. was able to exit the vehicle.

¶ 6        Defendant was driving rapidly. He drove down 43rd Street, and then took Wallace Avenue to 39th Street and Pershing Avenue. He turned toward the expressway. Once they were about 1 1/2 blocks from the expressway, S.M. began kicking the dashboard and screaming, "hoping somebody would see what was going on." S.M. testified she "was panicking" because she "thought he might have got on the expressway. I didn't want to get on the expressway." S.M. testified she did not agree to go anywhere with defendant, and she did not know where he was taking her.

¶ 7        As they reached 39th Street and Princeton Avenue, with S.M. kicking and screaming, defendant unlocked the car doors, opened the passenger door, and pushed S.M. out of the vehicle at a stop sign. S.M. was able to grab her purse as she fell from the vehicle. Defendant drove away.

¶ 8        S.M. walked to a nearby gas station and called the police. An ambulance arrived and transferred her to Mercy Hospital, where she was treated and released several hours later. S.M.'s friend took photographs of S.M.'s injuries.

¶ 9        S.M. testified that the next day, one of defendant's friends, Jakeima Brooks, came to her house. Brooks handed S.M. the keys to S.M.'s vehicle and told her defendant had asked him to give her the keys.

¶ 10        S.M. also testified to other incidents of physical abuse by defendant. The court admonished the jury that this evidence was "being received on the issue of the defendant's

state of mind, motive, and intent and it may be considered by you only for that limited purpose." S.M. testified that, on October 18, 2008, S.M. and defendant got into a "heated argument" and defendant punched S.M. in the face, head, and body. Their two eldest sons broke up the fight, defendant left the house, and S.M. contacted the police. The court issued a no-contact order of protection against defendant on October 31, 2008, as a result of that incident. Defendant was present in court when that order was entered. It was in effect on March 30, 2010, the date of the present incident.

¶ 11     On October 31, 2009, S.M. was walking with defendant near her home at approximately 3:45 a.m. when they had another argument. Defendant punched S.M. in the face. Defendant's friend broke up the fight. S.M. called the police.

¶ 12     On March 10, 2010, S.M. exited a gas station on 42nd Street and Wentworth Avenue and saw defendant in a van with another man and two women. As S.M. approached her vehicle, defendant called her a "bitch" and punched her in the face and head. S.M. sustained a black eye. Defendant ran when S.M.'s eye swelled and started to bleed.

¶ 13     Just days after the incident at issue here, on April 1, 2010, S.M. fell to the ground while at a party. S.M. looked up from the floor and saw defendant's foot coming toward her. Defendant kicked her in the back of the head. He then bent over and punched S.M. with both fists and stomped on her back. Defendant ran away before the police arrived. S.M. suffered an abrasion on her forehead, two black eyes, and a broken nose.

¶ 14     At approximately midnight on June 29, 2010, S.M. was walking toward her house. Defendant appeared out of the darkness and hit S.M. She fell to the ground from the blow. Defendant then hit her in the back of the head and stomped his foot on her back. S.M. yelled.

A neighbor heard the commotion and opened a door, asking defendant what he was doing. Defendant fled. S.M. went to the police station and reported the attack.

¶ 15 On cross-examination, S.M. admitted she had attempted suicide sometime in the 1990s. S.M. was hospitalized for three days following her suicide attempt. S.M. denied ever having approached Jennifer, the woman defendant was dating in 2008, with a gun. She admitted having spoken with defendant in March 2012, but denied asking defendant to date her again or offering to drop the charges. She explained that she contacted defendant on behalf of their son, who was incarcerated.

¶ 16 Paramedic Eric Rodriguez testified he gave S.M. an ice pack and towel for a bleeding lip laceration on March 30, 2010, at the gas station, and then transported her to Mercy Hospital.

¶ 17 Dr. Sudhir Kelkar testified that he was an attending physician at Mercy Hospital on March 30, 2010. He treated S.M. after she reported having been hit in the face with a fist. Dr. Kelkar observed a laceration on the inside of S.M.'s upper lip and testified that this injury was consistent with S.M. having been hit with a closed fist. Although other causes were possible, Dr. Kelkar testified that this type of injury was a blunt trauma injury.

¶ 18 The State rested.

¶ 19 Brooks testified on defendant's behalf, explaining that he had known defendant and the victim for two or three years. He denied having given the car keys back to S.M. in March 2010 and testified that defendant never asked him to give her anything. Brooks acknowledged he had two prior felony convictions for possession of a controlled substance in 2008 and 2011.

¶ 20      Jennifer Merideth also testified on defendant's behalf.  She met S.M. in 2004 and defendant in 2006.  She began dating defendant after S.M. and defendant ended their relationship.  S.M. and Merideth did not get along once Merideth and defendant began to date.  She described a number of instances when, after Merideth started dating defendant, S.M. allegedly attacked her.  This included attempting to hit Merideth with her car, breaking Merideth's home's windows with a gun, spraying Merideth with mace, spitting on Merideth, and attempting to attack her at a gas station.  She did not require medical treatment after these incidents.  She testified that she lived with defendant and they moved apartments after S.M. broke their windows.  Merideth testified that she obtained a one-year order of protection against S.M.  Merideth and defendant have a child together who was born in March 2011.

¶ 21      Defendant testified on his own behalf.  He admitted he knew there was an order of protection against him at the time of the incident in question.  He denied that he attacked S.M. on March 20, 2010.  He testified he did not get into a car with her and denied having driven her anywhere on that day.

¶ 22      The defense rested.  Following arguments by both parties, the jury found defendant guilty of aggravated kidnapping, violation of an order of protection, and domestic battery.  At a subsequent sentencing hearing, the court sentenced defendant to 28 years' imprisonment for aggravated kidnapping, 3 years' imprisonment for violation of an order of protection, and 3 years' imprisonment for domestic battery, all sentences to run concurrently.

¶ 23      Defendant appeals.


¶ 24                              II.  ANALYSIS

¶ 25                                    A.  The Felony Classification

¶ 26         On appeal, defendant first contends that his aggravated kidnapping conviction should be reduced to kidnapping because the State failed to introduce evidence of his prior domestic battery conviction that enhanced his domestic battery to a felony during the trial. Specifically, defendant argues that the jury was only given opportunity to find defendant guilty of *misdemeanor* domestic battery and not of *felony* domestic battery and, therefore, defendant's domestic battery conviction cannot satisfy aggravated kidnapping's "another felony" element.  For the following reasons, we disagree.

¶ 27         It is the purview of the legislature to determine what is considered criminal conduct, to assign penalties for that conduct, and to enact statutory provisions which enhance a criminal offense or enhance the applicable range of punishment for an offense.  *People v. Thomas*, 171 Ill. 2d 207, 223 (1996).  We are mindful that the primary rule of statutory construction is to ascertain and give effect to the intent of the legislature.  *People v. McChriston*, 2014 IL 115310, ¶ 15; *People v. Ramirez*, 214 Ill. 2d 176, 179 (2005).  The most reliable indicator and best evidence of legislative intent is the language used in the statute itself, and where the statutory is clear and unambiguous, its plain and ordinary meaning will be given effect. *Ramirez*, 214 Ill. 2d at 179.  Although the trial court has discretion to impose a sentence, we review the issue *de novo* because it involves a question of law.  *People v. Chaney*, 379 Ill. App. 3d 524, 527 (2008); see also *People v. Harris*, 203 Ill. 2d 111, 116 (2003) (the construction of a statute is a question of law for which review is *de novo*).

¶ 28         A person commits the offense of kidnapping when, in pertinent part, he knowingly and secretly confines another against her will; or by force or threat of imminent force carries another from one place to another with intent secretly to confine that other person against her

will. 720 ILCS 5/10-1 (West 2010). A person commits the offense of aggravated kidnapping when, in pertinent part, at the time he commits the offense of kidnapping, he commits another felony upon his victim. 720 ILCS 5/10-2(a)(3) (West 2010).

¶ 29    A person commits the offense of domestic battery if, in pertinent part, he knowingly without legal justification by any means causes bodily harm to any family or household member. 720 ILCS 5/12-3.2 (a)(1) (West 2010). Domestic battery is a Class A misdemeanor. 720 ILCS 5/12-3.2(b) (West 2010). However, domestic battery is a Class 4 felony if the defendant has any prior conviction for domestic battery. 720 ILCS 5/12-3.2(b) (West 2010). Specifically, section 12-3.2(b) of the Criminal Code of 1961 (Code) sets forth the possible classifications and sentences for this offense:

"(b) Sentence. Domestic battery is a Class A misdemeanor. Domestic battery is a *Class 4 felony if the defendant has any prior conviction under this Code for domestic battery* (Section 12-3.2) or violation of an order of protection (Section 12-3.4 or 12-30), or any prior conviction under the law of another jurisdiction for an offense which is substantially similar." (Emphasis added.) 720 ILCS 5/12-3.2(b) (West 2010).

¶ 30    Section 111-3(a) of the Code of Criminal Procedure of 1963 sets forth what must be included in a criminal charge:

"Form of charge.

(a) A charge shall be in writing and allege the commission of an offense by:

(1) Stating the name of the offense;

8

(2) Citing the statutory provision alleged to have been violated;

(3) Setting forth the nature and elements of the offense charged;

(4) Stating the date and county of the offense as definitely as can be done; and

(5) Stating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty."  725 ILCS 5/111-3(a) (West 2010).

¶ 31    Here, the charging instruments read, in pertinent part:

"The State's Attorney of Cook County now appears before the Circuit Court of Cook County and in the name and by the authority of the People of the State of Illinois states that on or about March 30, 2010 at and within the County of Cook

Hubert Sumler

committed the offense of AGRAVATED KIDNAPING

in that in that [*sic*] HE, KNOWINGLY AND BY FORCE OR THREAT OF IMMINENT FORCE CARRIED [S.M.] FROM ONE PLACE TO ANOTHER WITH INTENT SECRETLY TO CONFINE [S.M.] AGAINST HER WILL, AND HE COMMITTED ANOTHER FELONY UPON [S.M.], TO WIT:  DOMESTIC BATTERY,

9

IN VIOLATION OF CHAPTER 720 ACT 5 SECTION 10-2(a)(3) OF THE ILLINOIS COMPILED STATUTES 1992 AS AMENDED AND Contrary to the Statute and against the peace and dignity of the same People of the State of Illinois." (Count I)

¶ 32     And:

"The State's Attorney of Cook County now appears before the Circuit Court of Cook County and in the name and by the authority of the People of the State of Illinois states that on or about March 30, 2010 at and within the County of Cook

Hubert Sumler

committed the offense of          VIOLATION OF AN ORDER OF PROTECTION

in that HE, KNOWINGLY OR INTENTIONALLY, COMMITTED AN ACT WHICH WAS PROHIBITED BY THE CIRCUIT COURT OF COOK COUNTY OR FAILED TO COMMIT AN ACT WHICH WAS ORDERED BY THE COURT, IN A VALID ORDER OF PROTECTION UNDER CASE NUMBER 08144541401, IN VIOLATION OF A REMEDY AUTHORIZED UNDER PARAGRAPH 1 OF SUBSECTION (b) OF SECTION 214 OF THE ILLINOIS DOMESTIC VIOLENCE ACT OF 1986, TO WIT: STRUCK [S.M.] ABOUT THE BODY, AND SUCH VIOLATION OCCURRED AFTER HUBERT SUMLER HAD BEEN SERVED WITH NOTICE OF THE CONTENTS OF THE ORDER OF PROTECTION OR HAD OTHERWISE ACQUIRED KNOWLEDGE OF

THE CONTENTS OF THE ORDER, AND HE HAS BEEN PREVIOUSLY CONVICTED OF THE OFFENSE OF DOMESTIC BATTERY, UNDER CASE NUMBER 08144541401,

IN VIOLATION OF CHAPTER 720 ACT 5 SECTION 12-30(a) OF THE ILLINOIS COMPILED STATUTES 1992 AS AMENDED AND

Contrary to the Statute and against the peace and dignity of the same People of the State of Illinois." (Count V)

¶ 33 And:

"The State's Attorney of Cook County now appears before the Circuit Court of Cook County and in the name and by the authority of the People of the State of Illinois states that on or about March 30, 2010 at and within the County of Cook

Hubert Sumler

committed the offense of DOMESTIC BATTERY

in that HE, INTENTIONALLY OR KNOWINGLY WITHOUT LEGAL JUSTIFICATION BY ANY MEANS CAUSED BODILY HARM TO [S.M.], TO WIT: STRUCK [S.M.] ABOUT THE BODY, AND [S.M.] WAS A FAMILY OR HOUSEHOLD MEMBER AS DEFINED IN SUBSECTION (3) OF SECTION 112a-3 OF THE CODE OF CRIMINAL PROCEDURE OF 1963 AS AMENDED, TO WIT: THEY HAVE HAD A DATING RELATIONSHIP, AND HE HAS BEEN PREVIOUSLY CINVICTED OF DOMESTIC BATTERY UNDER CASE NUMBER 08144541401,

11

IN VIOLATION OF CHAPTER 720 ACT 5 SECTION 12-3.2(a)(1) OF THE ILLIONIS COMPILED STATUTES 1992 AS AMENDED AND contrary to the Statute and against the peace and dignity of the same People of the State of Illinois."  (Count XIII)

¶ 34    These charging instruments complied with section 111-3 in that each included:  the name of the offense, that is, aggravated kidnapping, violation of an order of protection, and domestic battery.  Each cited the statutory provisions alleged to have been violated, that is, "Chapter 720 Act 5 Section 10-2(a)(3) of the Illinois Compiled Statutes 1992 as amended"; "Chapter 720 Act 5 Section 12-30 (a) of the Illinois Compiled Statutes 1992 as amended"; and "Chapter 720 Act 5 Section 12-3.2(a)(1) of the Illinois Compiled Statutes 1992 as amended."  Each stated the nature and elements of the offense charged, that is, "he, knowingly by force of threat of imminent force carried [S.M.] from one place to another with intent secretly to confine [S.M.] against her will, and he committed another felony upon [S.M.], to wit:  domestic battery"; he "struck [S.M.] about the body, and such violation occurred after Hubert Sumler had been served with notice of the contents of the order of protection or had otherwise acquired actual knowledge of the contents of the order, and he has been previously convicted of the offense of domestic battery, under case number 08144541401"; and "he, intentionally or knowingly without legal justification by any means caused bodily harm to [S.M.], to wit:  struck [S.M.] about the body, and [S.M.] was a family or household member as defined in subsection (3) of section 112A-3 of the Code of Criminal Procedure of 1963 as amended, to wit:  they have had a dating relationship, and he has been previously convicted of domestic battery under case number 08144541401."  Each also stated

the date and county of the offense, as well as stated defendant's name as that of the accused. See 725 ILCS 5/111-3(a) (West 2010).

¶ 35    Section 111-3(c) additionally provides, in pertinent part:

"(c) When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. However, the fact of such prior conviction and the State's intention to seek an enhanced sentence are not elements of the offense and may not be disclosed to the jury during trial unless otherwise permitted by issues properly raised during such trial. For the purposes of this Section, 'enhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level classification of offense set forth in Section 5-4.5-10 of the Unified Code of Corrections (730 ILCS 5/5-4.5-10); it does not include an increase in the sentence applied within the same level of classification of offense." 725 ILCS 5/111-3(c) (West 2010).

¶ 36    Our supreme court has stated, "[t]he legislature enacted section 111-3(c) to ensure that a defendant received notice, before trial, of the *offense* with which he is charged." (Emphasis in original.) *People v. Jameson*, 162 Ill. 2d 282, 290 (1994). In construing a statute, we look to the language of the statute itself, as the language ordinarily provides the best evidence of the legislature's intent. *Jameson*, 162 Ill. 2d at 290.

¶ 37    Our supreme court recently determined that when a prior conviction is already a required element of the offense as alleged in the charging instrument, notice of enhancement under section 111-3(c) is not required. *People v. Easley*, 2014 IL 115581, ¶¶ 19, 22-26.

¶ 38    In *Easley*, the defendant was convicted of unlawful use of a weapon by a felon (UUW by a felon) based on his possession of a handgun and his previous conviction for UUW by a felon. *Easley*, 2014 IL 115581, ¶ 10. The court sentenced the defendant under the Class 2 version of the UUW by a felon offense to nine years in prison. *Easley*, 2014 IL 115581, ¶¶ 10-11. In this court, the defendant argued he was improperly sentenced as a Class 2 offender because the State failed to notify him that it intended to charge him with an " 'enhanced' Class 2 offense." *Easley*, 2014 IL 115581, ¶ 11. The appellate court agreed, concluding that the defendant's Class 2 sentence violated section 111-3(c); the court then vacated the defendant's sentence and remanded with instructions to impose a Class 3 sentence on the defendant. *Easley*, 2014 IL 115581, ¶ 11.

¶ 39    On appeal to our supreme court, the court first observed that section 111-3(c) was enacted to " 'ensure that a defendant receive notice, before trial, of the *offense* with which he is charged.' (Emphasis in original.)" *Easley*, 2014 IL 115581, ¶ 18 (quoting *Jameson*, 162 Ill. 2d at 290). Our supreme court then held:

>    "In construing the language of section 111-3(c), it is clear that the notice provision applies only when the prior conviction that would enhance the sentence is not already an element of the offense. The language of section 111-3(c) states that 'the fact of such prior conviction and the State's intention to seek an enhanced sentence *are not elements of the offense* and may not be disclosed to the jury during trial unless

otherwise permitted by issues properly raised during such trial.' (Emphasis added.) [Citation.] This language necessarily implies that section 111-3(c) applies only when the prior conviction is not an element of the offense. We therefore agree with the State and conclude that notice under section 111-3(c) is not necessary when the prior conviction is a required element of the offense. Under these circumstances, only one class of felony conviction is possible for the offense as alleged in the charging instrument." *Easley*, 2014 IL 115581, ¶ 19.

¶ 40        Applying the above reasoning to the facts of the case before it, the court noted that the UUW by a felon statute specifically provides that a second or subsequent violation of the section " 'shall be a Class 2 felony.' " (Emphasis omitted.) *Easley*, 2014 IL 115581, ¶ 21 (quoting 720 ILCS 5/24-1.1(e) (West 2008)). The court continued:

"The indictment in this case alleged that defendant was guilty of unlawful use of a weapon by a felon in that he was previously convicted of unlawful use of a weapon by a felon. The section 111-3(c) notice provision clearly does not apply in this case because the State did not seek to enhance defendant's sentence with his prior conviction. Rather, as alleged in the indictment, *defendant's Class 2 sentence was the only statutorily allowed sentence* under [the UUW by a felon statute]. Defendant could not have been given a Class 3 sentence under the applicable sentencing statute." (Emphasis added.) *Easley*, 2014 IL 115581, ¶ 22.

15

¶ 41    The court also found *People v. Nowells*, 2013 IL App (1st) 113209, also a UUW by a felon case, persuasive. *Easley*, 2014 IL 115581, ¶ 25 ("We also find [*Nowells*] persuasive on this issue. *Nowells* similarly held that the notice provisions of section 111-3(c) are inapplicable when the prior conviction is a required element of the offense."). In *Nowells*, the defendant was convicted of UUW by a felon and sentenced to a Class 2 sentence. *Nowells*, 2013 IL App (1st) 113209, ¶ 1. On appeal, the defendant argued that "the trial court erred in sentencing him as a Class 2 felon for [UUW] by a felon where the State had charged him with the Class 3 offense of [UUW] by a felon and did not give [him] proper notice that it was charging him with an enhanced Class 2 offense." *Nowells*, 2013 IL App (1st) 113209, ¶ 17. The court considered the Section 111-3(c) notice provision and determined that "notice is not necessary when the prior conviction is a required element of the offense, such that only one class of felony conviction is possible for that offense as alleged in the charging instrument." *Nowells*, 2013 IL App (1st) 113209, ¶ 26.

¶ 42    The *Nowells* court explained that the charging instrument in that cause alleged the defendant had committed the offense of UUW by a felon in that he was found in possession of a firearm after having previously been convicted of a felony offense, delivery of a controlled substance. *Nowells*, 2013 IL App (1st) 113209, ¶ 27. The court concluded that the "section 111-3(c) notice provision does not apply in the instant case because the State did not seek to enhance [the] defendant's sentence; as alleged in the indictment, defendant's Class 2 sentence was the *only* statutorily allowed sentence available in this situation." (Emphasis in original.) *Nowells*, 2013 IL App (1st) 113209, ¶ 27.

¶ 43    While we recognize that *Easley* involved a conviction for UUW by a felon, and the case at bar involves convictions for aggravated kidnapping predicated on domestic battery,

16

domestic battery, and violation of an order of protection, we nonetheless find the *Easley* reasoning instructive.

¶ 44     Here, defendant had a previous conviction for domestic battery at the time he committed the domestic battery at issue in this cause. Thus, when defendant was charged with domestic battery, only a felony was statutorily available. 720 ILCS 5/12-3.2(b) (West 2010); see also *Easley*, 2014 IL 115581, ¶ 22. Defendant was also charged with aggravated kidnapping, which charge alleged kidnapping under an asportation theory and enhanced by the additional felony offense of domestic battery, that is, "he, knowingly by force of threat of imminent force carried [S.M.] from one place to another with intent secretly to confine [S.M.] against her will, and he committed another felony upon [S.M.], to wit: domestic battery." As in *Easley*, the State was not seeking an enhanced sentence, but rather, the imposition of the *only* sentence statutorily permissible for this offense. See *Easley*, 2014 IL 115581, ¶ 22; see also *Nowells*, 2013 IL App (1st) 113209, ¶ 27.

¶ 45     Defendant does not dispute the facts supporting his convictions, but argues that the jury was only given opportunity to find defendant guilty of *misdemeanor* domestic battery and not of *felony* domestic battery and, therefore, defendant's domestic battery conviction cannot satisfy aggravated kidnapping's "another felony" element. We disagree, where the State proved defendant committed kidnapping where he confined S.M. in a vehicle and transported her to another location against her will. The State also proved defendant committed domestic battery beyond a reasonable doubt where it established defendant knowingly caused bodily harm to S.M., with whom he had three children. This domestic battery conviction was a felony because, where defendant had a prior conviction for domestic battery, he could not be charged with or convicted of anything less than the felony.

17

Accordingly, the State proved defendant committed felony domestic battery while also committing aggravated kidnapping.

¶ 46    In compliance with *Easley* and section 111-3(c), the State did not disclose defendant's prior domestic battery conviction to the jury at trial. The jury was properly instructed:

> "A person commits the offense of domestic battery when he knowingly and by any means causes bodily harm to any family or household member." Illinois Pattern Jury Instructions, Criminal, No. 11.11 (4th ed. 2000).

¶ 47    The jury found defendant guilty of domestic battery. The State then presented defendant's prior conviction for domestic battery at the sentencing hearing, along with certified copies of defendant's previous convictions for possession of a controlled substance and for attempted murder. The trial court then sentenced defendant as a Class 4 felon for the offense of aggravated kidnapping.

¶ 48    Our analysis here shows that, in line with our supreme court's opinion in *Easley*, defendant was charged with and convicted of felony domestic battery as a matter of law. Felony domestic battery was the only conviction possible for the offense of domestic battery as alleged in the charging instrument ("he, intentionally or knowingly without legal justification by any means caused bodily harm to [S.M.], to wit: struck [S.M.] about the body, and [S.M.] was a family or household member as defined in subsection (3) of section 112A-3 of the Code of Criminal Procedure of 1963 as amended, to wit: they have had a dating relationship, *and he has been previously convicted of domestic battery* under case number 08144541401"). The domestic battery statute is clear that a domestic battery offense is a Class 4 felony when the defendant has one or two prior convictions for domestic battery

18

under section 12-3.2. 720 ILCS 5/12-3.2(b) (West 2010). Therefore, the legislature has determined that defendant committed a Class 4 felony offense based on his prior domestic battery conviction.

¶ 49     Starting from the fact, then, that the domestic battery conviction is properly a felony conviction, we move on to the aggravated kidnapping statute. Under that statute, a person commits the offense of aggravated kidnapping when, in pertinent part, at the time he commits the offense of kidnapping, he commits another felony upon his victim. 720 ILCS 5/10-2(a)(3) (West 2010). Where the State proved defendant committed felony domestic battery at the same time he committed a kidnapping, and defendant does not contest the underlying facts of the crime, as a matter of law, the State proved defendant guilty of aggravated kidnapping. We affirm the decision of the trial court in this regard.

¶ 50                          B. The Asportation of the Victim

¶ 51     Next, defendant contends that his conviction for aggravated kidnapping should be reduced to unlawful restraint where the asportation was incidental to the offense of domestic battery, the asportation was brief, and pushing S.M. out of the vehicle demonstrated that he did not intend to kidnap her. We disagree.

¶ 52     Before we consider the merits of defendant's claim, we must first resolve a dispute between the parties regarding the proper standard of review to be applied here. Defendant maintains that a *de novo* standard of review is appropriate in this case because he does not contest the facts supporting his conviction but, rather, raises a question of law as to whether or not the victim's asportation was incidental to the domestic battery. The State, however, argues that a sufficiency of the evidence standard should apply.

¶ 53        This court has previously settled the question of the proper standard of review to be applied in a similar circumstance.  In *People v. McCarter*, 2011 IL App (1st) 092864, the defendant argued for the reversal of his aggravated kidnapping conviction on the grounds that the asportation of the victim was incidental to another crime committed.  *McCarter*, 2011 IL App (1st) 092864, ¶ 59.  Like the instant defendant, the *McCarter* defendant argued for a *de novo* standard of review because the facts were not in dispute.  *McCarter*, 2011 IL App (1st) 092864, ¶ 60.  The reviewing court, however, noted:  "[W]hen a defendant challenges incriminating inferences that may have been drawn by the trier of fact from the evidence, the challenge constitutes a claim against the sufficiency of the evidence."  *McCarter*, 2011 IL App (1st) 092864, ¶ 60.  In *McCarter*, we held that "[b]ecause the defendant's challenge is directed at the quantum of evidence presented against him, the correct standard of review is that which applies to the sufficiency of the evidence challenge."  *McCarter*, 2011 IL App (1st) 092864, ¶ 60.  We agree with the court in *McCarter* that the proper standard of review is that which applies to a challenge to the sufficiency of the evidence.

¶ 54        When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *People v. Campbell*, 146 Ill. 2d 363, 374 (1992).  The trier of fact determines the credibility of witnesses and the weight to be given their testimony, resolves conflicts in the evidence, and draws reasonable inferences from the evidence.  *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001).  We will not substitute our judgment for that of the trier of fact.  *Ortiz*, 196 Ill. 2d at 259.  A reviewing court must construe all reasonable inferences

from the evidence in favor of the prosecution. *People v. Bush*, 214 Ill. 2d 318, 326 (2005). We will not set aside a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Ortiz*, 196 Ill. 2d at 259.

¶ 55    As noted above, the Code provides that a person is guilty of aggravated kidnapping when he commits the offense of kidnapping and also commits another felony upon his victim. 720 ILCS 5/10-2(a)(3) (West 2010). A person commits the offense of kidnapping when, in pertinent part, he knowingly and secretly confines another against her will; or by force or threat of imminent force carries another from one place to another with intent secretly to confine that other person against her will. 720 ILCS 5/10-1 (West 2010).

¶ 56    To determine whether an asportation or detention rises to the level of kidnapping as a separate offense, this court considers the following four factors: (1) the duration of the asportation or detention; (2) whether the asportation or detention occurred during the commission of a separate offense; (3) whether the asportation or detention that occurred is inherent in the separate offense; and (4) whether the asportation or detention caused a significant danger to the victim independent of that posed by the separate offense. *People v. Smith*, 91 Ill. App. 3d 523, 529 (1980). This determination depends on the particular facts and circumstances of each case. *People v. Ware*, 323 Ill. App. 3d 47, 54 (2001).

¶ 57    Considering these factors, we first look at the duration of the asportation. Defendant argues that the detention of the victim was for such a short period of time and for only a few blocks that we should not consider it sufficient for "asportation" purposes. We disagree, " 'it is well settled that "a kidnaping conviction is not precluded by the brevity of the asportation or the limited distance of the movement." ' " *People v. Watson*, 342 Ill. App. 3d 1089, 1099

(2003) (quoting *People v. Jackson*, 331 Ill. App. 3d 279, 294 (2002), quoting *Ware*, 323 Ill. App. 3d at 54). "Indeed, this court has previously held that an asportation of less than one block and a detention of a few minutes were sufficient to support a separate kidnaping conviction." *Jackson*, 331 Ill. App. 3d at 294.

¶ 58    As to the second factor, the record also shows that the asportation of the victim occurred after the commission of the separate offense of domestic battery. The evidence at trial showed that defendant repeatedly hit the victim before entering the vehicle. He then closed and locked the car with the victim inside, and forcibly drove away with the victim inside, screaming for help. The domestic battery was complete prior to defendant driving away with the victim in the car. This satisfies the second *Smith* factor.

¶ 59    As to the third factor, we find that the asportation was not inherent in the separate offense of domestic battery. "[I]n order for the asportation or detention to be inherent in a separate offense, it must constitute an element of that offense." *People v. Quintana*, 332 Ill. App. 3d 96, 108 (2002). Here, the separate offense was domestic battery. A person commits domestic battery when, in pertinent part, he knowingly without legal justification by any means causes bodily harm to any family or household member. 720 ILCS 5/12-3.2 (West 2010). Because asportation and detention of the victim are not elements of the offense of domestic battery, they are not "inherent" for purposes of this third factor.

¶ 60    Finally, we consider the fourth factor, whether the asportation or detention that occurred created a significant danger to the victim independent of that posed by the separate offense. In other words, did defendant's trapping the victim in her car, driving rapidly through city streets while the victim screamed for help, and eventually shoving her out of the vehicle create a significant danger to the victim independent of that posed by defendant

hitting the victim while he was standing by her car? Defendant would have us believe that the "asportation did not create a significant danger to [the victim] independent of that posed by the separate offense of domestic battery [because the victim] was harmed when [defendant] punched her and not by being driven a few blocks and released near a manned gas station." We disagree. At minimum, defendant forced the victim to ride in a vehicle at a high rate of speed through city streets, away from her home. She was subject to the possibility that an accident could have occurred, that she could have injured herself in attempting to escape from the speeding vehicle, or she could have injured herself when he shoved her out of the car, leaving her alone and bleeding on a city street. Defendant forcibly taking control of the victim's vehicle and driving her around as he did created a potential risk to the victim that was substantially increased above the risk present in the initial domestic battery itself. Having considered all the necessary factors, we conclude that defendant's aggravated kidnapping conviction was not merely incidental to the domestic battery that occurred.

¶ 61      Defendant also argues that the fact he pushed the victim out of the vehicle demonstrates he did not intend to kidnap her. Again, we disagree. As stated above, there is no minimum amount of time the victim must be confined or distance the aggressor must travel with the victim in order to constitute a kidnapping. Rather, as here, to be guilty of kidnapping, the defendant must, in pertinent part, by force or threat of imminent force carry the victim from one place to another with intent to secretly confine that other person against her will. 720 ILCS 5/10-1 (West 2010). The fact that defendant eventually released the victim from the car does not negate the fact that he intended to confine her.

¶ 62    Here, after viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found the facts and circumstances in this case show the asportation and detention of the victim were independent from the offense of domestic battery. The evidence was sufficient to find that the elements of this separate offense were established beyond a reasonable doubt. The record shows defendant approached the victim's parked vehicle from the driver's side while the victim's back was turned. Defendant repeatedly hit her about the face and head. In order to attempt to escape through the passenger door, the victim climbed into the passenger seat. However, defendant climbed in after her and sat in the driver's seat. Defendant prevented her escape by driving quickly away. Defendant drove rapidly for a number of city blocks. The victim screamed and kicked the dashboard during this time in an effort to get other motorists' attention. Defendant did not stop the vehicle. Defendant steered the vehicle toward the expressway, with the victim screaming all the while. As they approached the expressway, defendant unlocked the car doors, opened the passenger door, and pushed the victim out of the vehicle at a stop sign. Defendant drove away, leaving the victim bleeding on the side of the road. Defendant's conviction of aggravated kidnapping is affirmed.

¶ 63                          C. Defendant's Sentence

¶ 64    Next, defendant contends that he is entitled to a new sentencing hearing. Specifically, defendant argues that trial court erred when imposing his sentence "under the mistaken belief" that defendant would only have to serve one-half of the sentence and that, had the trial court understood he would be required to serve at least 85% of his sentence, it would have imposed a lesser sentence.

¶ 65        The State initially argues, and the defendant concedes, that he has forfeited this issue for purposes of appeal by failing to object to it at trial and failing to raise it in his posttrial motion. In order to preserve an issue for appeal, a defendant must first make an objection to the alleged error at trial, and then raise it in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); see also *People v. Allen,* 222 Ill. 2d 340, 352 (2006) (noting that "even constitutional errors can be forfeited"). Defendant nevertheless asks this court to review his claim under the plain error doctrine, arguing that his he was deprived of his "substantive right to fair and accurate sentencing proceedings." See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."); *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

¶ 66        Generally, and as defendant notes, the plain error doctrine allows us to consider a forfeited error when either the evidence is close or when the error is of sufficient seriousness. See *Herron*, 215 Ill. 2d at 186-87. Under the first prong, a defendant must prove a prejudicial error occurred, namely, that there was plain error and that the evidence was so closely balanced that this error alone severely threatened to tip the scales of justice against him. See *Herron*, 215 Ill. 2d at 187; accord *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The second prong of the plain error doctrine examines the seriousness of the error, regardless of the closeness of the evidence. See *Herron*, 215 Ill. 2d at 187; accord *Piatkowski*, 225 Ill. 2d at 565. The defendant must prove that there was plain error and that the error was so serious that it affected the fairness of his trial and challenged the integrity of the judicial process. See *Herron*, 215 Ill. 2d at 187. Ultimately, before a plain error analysis

may be undertaken, the defendant must show that an error occurred, for, absent error, there can be no plain error. See *People v. McGee*, 398 Ill. App. 3d 789, 794 (2010) (citing *Herron*, 215 Ill. 2d at 187); see also *Piatkowski*, 225 Ill. 2d at 565 ("the first step is to determine whether error occurred").

¶ 67 The plain error doctrine is a narrow and limited exception to the general rule of forfeiture. *People v. Bowman*, 2012 IL App (1st) 102010, ¶ 29 (citing *Herron*, 215 Ill. 2d at 177). Under either prong of the plain error doctrine, the burden of persuasion remains on the defendant. *Bowman*, 2012 IL App (1st) 102010, ¶ 30 (citing *People v. Lewis*, 234 Ill. 2d 32, 43 (2009)).

¶ 68 "The first step of plain-error review is to determine whether any error occurred." *Lewis*, 234 Ill. 2d at 43; see also *People v. Wilson*, 404 Ill. App. 3d 244, 247 (2010) ("There can be no plain error if there was no error at all ***."). This requires "a substantive look" at the issue raised. (Internal quotation marks omitted.) *People v. Johnson*, 208 Ill. 2d 53, 64 (2003). We will therefore first review the defendant's claim to determine if there was any error before considering it under plain error.

¶ 69 A trial court has broad discretion in determining an appropriate sentence. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005). A reviewing court will reverse the trial court's sentencing determination only where the trial court has abused its discretion. *Patterson*, 217 Ill. 2d at 448. A sentence within the statutory range does not constitute an abuse of discretion unless it varies greatly from the purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Henderson*, 354 Ill. App. 3d 8, 19 (2004). The trial court may appropriately consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age when sentencing a

defendant. *People v. Fern*, 189 Ill. 2d 48, 53 (1999). Where mitigating evidence is presented to the trial court, it is presumed, absent some indication other than the sentence itself to the contrary, that the court considered it. *People v. Benford*, 349 Ill. App. 3d 721, 735 (2004). When determining the propriety of a particular sentence, we cannot substitute our judgment for that of the trial court simply because we would weigh the sentencing factors differently. *Fern*, 189 Ill. 2d at 53.

¶ 70       In the case at bar, the trial court held a sentencing hearing during which it heard arguments from counsel in aggravation and mitigation. The State provided the court with certified copies of convictions for domestic battery, Class 4 possession of a controlled substance, and attempted murder. The victim presented a victim impact statement in which she recounted a history of being beaten by defendant. The State argued in aggravation that defendant had been repeatedly in and out of prison, that defendant at the time of this crime had an order of protection against him which he ignored, and that defendant continued to abuse the victim even after the incident in the case at bar. The State argued defendant was a "dangerous person" with a prior history including a 1995 possession of a firearm and three prior domestic battery convictions with the same victim. The State asked for an extended sentence of over 30 years' imprisonment.

¶ 71       Defense counsel admitted to a 1999 Class M conviction, but disagreed that there was a Class X conviction. Defense counsel argued that there had been a "long hateful relationship between" the victim and defendant "from both sides." He said the victim was angry because defendant had a new girlfriend. Defense counsel asked for a sentence in the "mid-range."

¶ 72 In elocution, defendant said only "I would like to say that I would like to apologize to her for the things that happened during the course of our relationship. So that's all there is, your Honor. That's all there is."

¶ 73 After hearing arguments, the court stated:

"THE COURT: I find the following factors in aggravation and mitigation to be appropriate. In aggravation the defendant has a prior criminal record consisting of four prior domestic battery convictions, an attempted murder conviction, and carrying a firearm, and possession of a controlled substance as laid out in the pre-sentence investigation, which may be filed with the amendments made today.

In aggravation the sentence is necessary for the protection of the public and specifically for the protection of the victim in this case. And in aggravation the sentence is necessary also for the rehabilitation of the defendant should such a thing be possible.

In mitigation, to be honest with you, Mr. Sumler, I don't find a whole lot to be in mitigation here, quite frankly. And in your whole life here you have some educational ability, apparently, and you have discontinued your drug use, apparently, so I will consider those in mitigation. You've apparently been getting along well in the jail since I haven't heard anything about that.

And in mitigation, the victim in this was not severely injured as a result of this. When I say 'severely injured,' I'm talking about requiring

extensive hospitalization, and that for that reason alone I don't think an extended term would be appropriate at this time.

So now based upon your, having considered your nature and circumstances of the offense, the arguments of counsel the statement of the defendant, and the pre-sentence investigation with the amendments made here today, it is the judgment and sentence of the court, Mr. Sumler, that on Count 1, the aggravated [kidnapping] you will be sentenced to 28 years in the Illinois Department of Corrections."

¶ 74    The court also sentenced defendant to three years' imprisonment for the violation of the order of protection, and three years' imprisonment for the domestic battery conviction, all sentences to run concurrently. It is the aggravated kidnapping sentence with which defendant takes issue here.

¶ 75    Defendant was convicted of aggravated kidnapping, a Class X offense with a sentencing range of 6 to 30 years' imprisonment. 720 ILCS 5/10-2(b) (West 2010); 730 ILCS 5/5-4.5-25(a) (West 2010). Based on his criminal history, including a prior Class X felony conviction for attempted murder, defendant was also eligible for an extended-term sentence of up to 60 years. 730 ILCS 5/5-4.5-25(a) (West 2010). Defendant's sentence for aggravated kidnapping of 28 years, therefore, is within the sentencing parameters for that crime. In aggravation, the court specifically mentioned defendant's criminal history, including prior convictions for domestic battery, attempted murder, carrying a firearm, and possession of a controlled substance. In mitigation, although the court stated it did not find many mitigating factors, it did acknowledge defendant's education, his effort to discontinue drug use, the assumption that he had been getting along well in jail, and the fact that the

victim's injuries did not require extensive hospitalization. The court also explained that it considered the nature and circumstances of the offense, the character and background of the defendant, arguments of counsel, defendant's elocution statement, and the presentence investigation report when determining defendant's sentence. It also stated that the sentence was necessary for the protection of the victim and the public, as well as necessary for defendant's potential rehabilitation. From the record before us it is clear that the court considered proper aggravating and mitigating factors prior to imposing a sentence, and crafted a sentence within the proper sentencing range.

¶ 76     Defendant, however, argues the court sentenced him to 28 years' imprisonment for aggravated kidnapping in error. Defendant argues that the court was "under the mistaken belief that [defendant] would be required to serve half of that sentence when in fact truth-in-sentencing requires him to serve 85 percent of the term." Therefore, argues defendant, the sentence is a result of an abuse of the court's discretion and he is entitled to a new sentencing hearing.

¶ 77     Section 3-6-3(a)(2.1) of the Unified Code of Corrections sets forth the general rule that those imprisoned will be entitled for day-for-day good-conduct credit against their sentences. 730 ILCS 5/3-6-3(a)(2.1) (West 2010). The term "truth-in-sentencing" refers to a change in the statutory method that the Department of Corrections uses to calculate the amount of good-conduct credit. *People v. Davis*, 405 Ill. App. 3d 585, 602 (2010); *People v. Salley*, 373 Ill. App. 3d 106, 109 (2007). Under the truth-in-sentencing provisions, a person convicted of certain enumerated offenses, including aggravated kidnapping, would receive no more than 4.5 days of credit for each month of his sentence. 730 ILCS 5/3-6-3(a)(2)(ii) (West 2010); *Davis*, 405 Ill. App. 3d at 602. Thus, defendant must serve at least 85% of his

sentence and does not receive normal day-for-day good-conduct credit. *Salley*, 373 Ill. App. 3d at 109.

¶ 78     At the end of the sentencing hearing in the case at bar, after the court announced defendant's sentence, the following question-answer took place, on which defendant relies:

"Q. [DEFENSE COUNSEL:] Your Honor, is that at the 85 percent or is that at the 50?

A. THE COURT: That aggravated kidnapping?

Q. The aggravated kidnapping.

A. No, that's at 50."

¶ 79     We agree it appears the trial court may have misapprehended the amount of time defendant would have to serve. However, there is nothing before us to show that the court based defendant's sentence on that mistaken belief. On the record before us, defendant is unable to show that the trial court considered the potential for good time credit when determining defendant's sentence. Defendant is unable to show error where the record reflects that the trial court considered appropriate factors including aggravation, mitigation, and defendant's potential for rehabilitation when crafting a sentence that was within the sentencing range.

¶ 80     Nonetheless, even if this were error, defendant's claim would still fail where the evidence presented at the sentencing hearing was not closely balanced, and any error was not so egregious as to deny defendant a fair sentencing hearing. See *Piatkowski*, 225 Ill. 2d at 565 (the plain error doctrine is a narrow and limited exception to the general rule of forfeiture and it "allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip

the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence") (citing *Herron*, 215 Ill. 2d at 186-87). At the sentencing hearing, as quoted above, the trial court specifically noted that there were not many mitigating factors in defendant's favor, stating:

> "THE COURT: In mitigation, to be honest with you, Mr. Sumler, I don't find a whole lot to be in mitigation here, quite frankly.

¶ 81      It went on to list the mitigating factors, including defendant's education, his effort to discontinue his drug use, the fact that defendant apparently was "getting along well in jail," and the fact that the victim's injuries did not require extensive hospitalization.

¶ 82      In aggravation, however, the court mentioned many factors, including defendant's criminal background of four domestic battery convictions involving the same victim, an attempted murder, possession of a firearm, and possession of a controlled substance. The court stated that it believed defendant's sentence was necessary to protect the public, protect the victim, and for any potential rehabilitation of defendant. Because the evidence presented at this sentencing hearing was not closely balanced, defendant is unable to overcome the "closely balanced" prong of the plain error analysis.

¶ 83      Neither was any error that occurred at the sentencing hearing so egregious as to deny defendant a fair sentencing hearing. Specifically, the court's understanding of the truth-in-sentencing applicability to defendant's sentencing did not impact the sentence it imposed. See, *e.g.*, *People v. Frison*, 365 Ill. App. 3d 932, 934 (2006) (In the context of a guilty plea, "though the truth-in-sentencing law may well affect the sentence defendant ultimately serves,

it does not affect the sentence imposed by the trial court. Moreover, given that it concerns good-conduct credit, its application is not definite, immediate, or automatic."). In addition, a defendant is not guaranteed the award of good-conduct credit under the truth-in-sentencing law, as such good-conduct award is not automatic, but is contingent upon a defendant's behavior in prison. *People v. Castano*, 392 Ill. App. 3d 956, 959-60 (2009). Any credit defendant may receive remains unknown and was not a matter the trial court could have determined. Defendant is unable to show any relationship between error at sentencing and the result of this case and is, therefore, also unable to overcome the second prong of the plain error analysis.

¶ 84        In the alternative, defendant argues that he was denied the effective assistance of trial counsel where counsel failed to preserve this error for review by objecting at trial. Defendant argues that "reasonable counsel familiar with the Code of Corrections would have corrected the trial court's misapprehension that truth-in-sentencing did not apply to Hubert's aggravated kidnapping conviction" and there "is a reasonable probability that the trial court would have sentenced Hubert to a substantially shorter sentence if counsel had informed the court that Hubert would be required to serve 85 percent of his aggravated kidnapping sentence."

¶ 85        To establish a claim of ineffective assistance of counsel, a defendant must show that: (1) his attorney's representation fell below an objective standard of reasonableness; and (2) he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *People v. Palmer*, 162 Ill. 2d 465, 475 (1994). Failure to make the requisite showing of either deficient performance or sufficient prejudice defeats the claim. *Palmer*, 162 Ill. 2d at 475-76. Defendant's claim fails because, just as he is unable to show resulting prejudice under a plain error analysis, he is unable to show resulting prejudice under an

ineffective assistance of counsel analysis. In holding with our analysis above, the evidence was not closely balanced and defendant did not suffer prejudice as a result of any error.

¶ 86                                    D.  One Act, One Crime

¶ 87        Defendant next contends his conviction for domestic battery must be vacated. Specifically, he argues that his conviction for domestic battery violated the one-act, one-crime doctrine because it was a lesser included offense of aggravated kidnapping predicated on domestic battery. As the State concedes, defendant is correct.

¶ 88        Although defendant failed to properly preserve this issue by raising it in the trial court, our supreme court has considered such claim under the substantial rights prong of the plain error rule. *People v. Harvey*, 211 Ill. 2d 368, 389 (2004). Consistent with *Harvey*, we address defendant's claim.

¶ 89        Briefly, we note that our state supreme court set forth the one-act, one-crime doctrine in *People v. King*, 66 Ill. 2d 551, 566 (1977), which held that multiple convictions are improper if they are based on precisely the same physical act and, since then, our courts have made clear that a defendant may not be convicted of multiple offenses based on the same act. See *People v. Johnson*, 237 Ill. 2d 81, 97 (2010); accord *People v. Burney*, 2011 IL App (4th) 100343, ¶ 86 (where a single act is involved, multiple convictions are improper); see also *People v. Miller*, 238 Ill. 2d 161, 165 (2010).

¶ 90        In deciding whether one of defendant's convictions must be vacated, we first determine whether defendant's conduct constituted a single act or separate acts. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). If the conduct in question constituted a single act, the conviction in question must be vacated. *Rodriguez*, 169 Ill. 2d at 186. Under the one-act,

one-crime rule, an "act" is defined as "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566.

¶ 91       When a defendant is convicted of two crimes for the same act, the lesser offense is merged into the greater offense. *People v. Artis*, 232 Ill. 2d 156, 170 (2009); *People v. Lee*, 213 Ill. 2d 218, 227 (2004).

¶ 92       Here, defendant was convicted of both aggravated kidnapping and domestic battery. In charging defendant with aggravated kidnapping, the State alleged that defendant knowingly and by force of threat or imminent force carried S.M. from one place to another with the intent to secretly confine her against her will, and that he committed domestic battery. In charging defendant with domestic battery, the State alleged that defendant caused bodily harm to S.M., with whom he had a dating relationship. Because the aggravated kidnapping charge was predicated on the offense of domestic battery, all of the elements of domestic battery were included in the charge of aggravated kidnapping predicated on domestic battery. The domestic battery charge did not contain any elements that were not included in the aggravated kidnapping predicated on domestic battery charge. Therefore, the charge of domestic battery was a lesser included offense of aggravated kidnapping.

¶ 93       Therefore, and in line with the State's concessions on this issue, we hold that defendant's conviction for domestic battery violated the one-act, one-crime doctrine. Therefore, defendant's sentence for aggravated kidnapping should be upheld and the conviction for domestic battery should be vacated. *Artis*, 232 Ill. 2d at 170 (when a defendant is convicted of two crimes for the same act, the lesser offense is merged into the greater offense); *Lee*, 213 Ill. 2d at 227.

¶ 94    Therefore, as defendant's mittimus reflects one 28-year term for his aggravated kidnapping conviction and a second 3-year term for his domestic battery conviction, we correct the mittimus to vacate the latter conviction and sentence.

¶ 95                              III.  CONCLUSION

¶ 96    Accordingly, we vacate the judgment entered on defendant's conviction of domestic battery; order the clerk of the court to correct the mittimus to reflect convictions for aggravated kidnapping and violation of an order of protection, and affirm the judgment of the trial court in all other respects.

¶ 97    Affirmed in part and vacated in part.  Mittimus corrected.